RAYMOND SANSONETTI, JR., *et al.*, Plaintiffs-Appellants, *v.* ARCHER LAUNDRY, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   Nos. 62072, 62082 cons.

Opinion filed December 7, 1976.—Rehearing denied January 11, 1977.

Kamin, Stanley & Balkin, of Chicago, for appellant Raymond Sansonetti, Jr.

David Alswang, of Chicago, for appellants.

Lord, Bissell & Brook, of Chicago (Richard E. Mueller, Charles H. Weiland, Clark C. King, Jr., and John J. Berwanger, of counsel), for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, Sansonetti and Kerr, brought separate actions to recover damages sustained due to the alleged negligence and wilful misconduct of defendant Archer Laundry, Inc., (hereinafter "Archer"), and its employees Edwin J. Bylica and Charles R. Cox. Both suits arose from a single accident which occurred on September 27, 1969, as Sansonetti and plaintiff's decedent, Louis E. Kerr, were employed doing maintenance work on the building and premises of St. Ignatius High School in Chicago,

Illinois. Plaintiffs also included in their respective suits counts charging St. Ignatius High School (hereinafter "St. Ignatius") with violation of the provisions of the Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 60 *et seq.*) and negligence for failure to maintain a reasonably safe work area.

All actions were consolidated solely for purposes of discovery. As a result of St. Ignatius' failure to comply in timely fashion with certain of these discovery orders an order of default and judgment for liability was entered against it on March 28, 1973, in favor of plaintiff Kerr. Kerr did not seek to establish damages, and subsequently, on December 4, 1974, the default and judgment for liability were vacated on motion of St. Ignatius. The Kerr suit proceeded to trial before a jury and Judge Canel. At the close of all the evidence the trial court entered an order directing the jurors to find against plaintiff Kerr on behalf of all defendants and entered judgment in accord with said order and verdict. From entry of the judgment plaintiff Kerr appeals.

Subsequent to judgment in the Kerr case, plaintiff Sansonetti filed a petition for change of venue alleging prejudice of the trial judge. It was dismissed as not timely filed. Defendants' motions for summary judgments against plaintiff on all counts were granted. Plaintiff Sansonetti appeals and urges that the court erred in entering said summary judgments.

Both parties filed timely notice of appeal, and the cases were consolidated for purposes of appeal.

A review of the evidence adduced at trial establishes that prior to September 27, 1969, plaintiffs' employer, Raymond Sansonetti, Sr., an independent contractor, had contracted to perform certain maintenance work on the building of St. Ignatius High School in Chicago, Illinois. The work to be performed on this date entailed the scraping and painting of exterior windows on the building's east wall. Sansonetti's employees assigned to this project were his son, Raymond Sansonetti, Jr., and Louis E. Kerr.

The men performed this work supported by a scaffold suspended from the roof of the east wall. The scaffold was 20 feet long and 2 feet wide and had been hung by the workmen.

The scaffolding was hung on the wall by the use of "rope nooses" or "sling loops" which were tied through portholes to joists at the top of the wall. A set of open hooks were attached to the top of each of the scaffold's pulleys and were secured by the nooses. A second set of hooks were attached to lower pulleys and iron stirrups supporting the stage of the scaffold. Ropes were run through the pulleys, and the scaffold assembly was raised and lowered by means of a pull rope or "fall line."

The pull rope was "tied in" to the scaffold when the device was suspended above ground and the fall line was permitted to hang to the parking lot below. No barricades were placed about the scaffold area.

To prevent a rope noose from slipping out of the top set of hooks as the scaffold was manipulated the Sansonetti workmen wrapped "baling" or "safety" wire around the shank of the hook, across the hook aperture and through a hole in the end of the hook.

On the date of the accident Sansonetti and Kerr left the scaffold in the aforementioned condition and went for lunch at approximately 12 noon. The scaffold hung parallel with the building's fourth floor, tied to the wall, and the fall line tied to the scaffold in a "double" or "safety" hitch.

Approximately 10 minutes after they returned to work an Archer delivery truck arrived in the parking lot to deliver laundry. The truck was operated by Archer's employee, Edwin J. Bylica, in the company of his helper, Charles R. Cox. The truck was driven into the parking lot toward the vicinity of the scaffold apparatus. It backed in and was parked a distance of 8-10 feet from the wall so that the back of the truck was facing toward the south end of the scaffold. Sylica and Cox dismounted and entered the building.

At approximately 1 p.m. Sansonetti and Kerr returned to their work and mounted the scaffold from the interior of the building. Kerr took his position at the north side of the scaffold and Sansonetti assumed his to the south end. The scaffold weighed 150 pounds; Kerr weighed 135 pounds; and Sansonetti weighed 140 pounds. Paint and other equipment of unspecified weight were also on the scaffold. Sansonetti testified that from his vantage point he observed defendant's truck parked "directly below" at a distance of 8-10 feet from the wall upon which the scaffold was suspended. Sansonetti also observed that the scaffold fall lines were "right in back" of the truck. No other vehicles were observed in the area.

The workmen lowered the scaffold approximately 15 feet by means of the pull rope, which maneuver, according to Sansonetti, required 10-15 seconds. Sansonetti indicated that upon reaching the desired level he hitched and secured his end of the scaffold and observed that Kerr had completed securing his end of the scaffold when that end dropped. Neither man wore a lifebelt. As a result of the sudden tilting of the scaffold both men were thrown to the ground resulting in Kerr's death and Sansonetti's severe injury. Conscious after his fall, Sansonetti had occasion to observe that a portion of the scaffold's ropes were laying on the rear bumper of defendant's truck. Sansonetti testified that this rope was from Kerr's end of the scaffold.

Plaintiff attempted to adduce the testimony of an engineer, Richard T. VerHalen, to the effect that he examined the scaffold materials and performed certain experiments in an effort to reconstruct the accident.

The court refused to admit VerHalen's reconstruction testimony. Plaintiff made an offer of proof that if VerHalen was permitted to testify he would relate that he performed certain tests utilizing the scaffolding materials involved in the accident; that such materials included a single assembly of pulleys, rope, and hooks; that the fall line of this assembly was struck several blows with a three-pound hammer "the purpose being to duplicate any stress that may have been caused by a sudden tension on the rope"; that after the fall line was struck three or four times the hook assembly inverted so that the load fell upon the safety wire; that a weight of 275 pounds was applied to the assembly; and that this weight caused the wire to stretch and break within a period of 10-15 seconds resulting in failure of the assembly.

Plaintiff also sought to present VerHalen's testimony as to the cause of the failure of the scaffold apparatus which resulted in plaintiffs' injuries by the use of a hypothetical question. The trial court sustained defense objections to this area of interrogation and the matter was stricken and the hypothetical question was allowed to stand as an offer of proof.

Plaintiff Kerr initially asserts that the trial court abused its discretion in vacating the default and judgment for liability entered on March 28, 1973, in plaintiff Kerr's favor against defendant St. Ignatius High School. In support of this assertion plaintiff Kerr alleges that she caused to be served certain interrogatories upon the attorneys of record for St. Ignatius on November 21, 1972; that no objections, answers or requests for extension of time regarding these interrogatories were filed within the requisite time limits; that defendant was twice ordered by the court to comply with the discovery orders and rules, which orders defendant ignored; that because of these failures an order of default and judgment for liability was entered against St. Ignatius High School on March 28, 1973; that defendant was duly served with that order; that on December 4, 1974, defendant filed answers to the interrogatories without leave of court two years after they were initially served. Leave to file the answers was granted instanter on that date whereupon defendant moved that the default and judgment for liability previously entered against him be vacated. The motion was granted. Trial began on January 6, 1975, and ended in a directed verdict in defendant's favor.

It is not contended that the order of March 28, 1973 was improper or an abuse of the court's discretion. Rather, the issue on appeal in this regard is the propriety of the subsequent vacation of the default and judgment.

■■ Plaintiff urges that the restrictive grounds of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72) should apply since defendant's motion to vacate the default and judgment for liability was not filed within 30 days of the entry of such orders. This would require a petition showing due diligence on the part of defense counsel which

nonetheless resulted in entry of the default and judgment for liability. (*George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973, 313 N.E.2d 684.) No explanation for defendant's failure to comply with the pretrial discovery rules has been advanced.

However, defendant correctly points out that the order of March 28, 1973, was not a final order so as to require defendant to collaterally attack it by means of a petition under section 72. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 226 N.E.2d 6.) Plaintiff chose not to establish her damages as would be required to reduce the default and judgment for liability to final judgment. Consequently, the provisions of section 72 are inapplicable.

Under section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 50(5)) it is no longer necessary that relief be sought on the precise grounds that there is a meritorious defense and that a reasonable excuse exists for not having asserted such a defense in a timely fashion. (*People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 270 N.E.2d 841.) Application of this rule rests upon the sound discretion of the trial court. *Nixon v. Harris* (1975), 31 Ill. App. 3d 204, 333 N.E.2d 667.

It is argued that fundamental fairness in conjunction with a lack of significant prejudice to plaintiff requires that the litigation involved in the instant case be disposed of on the merits. We fail to perceive any prejudice suffered by plaintiff Kerr occasioned by St. Ignatius' extensive and unexplained delay. Discovery against Archer proceeded in a timely fashion. As a result, plaintiff was able to prepare for trial against that defendant in an effort to establish that certain active negligence and wilful and wanton misconduct proximately caused plaintiff's decedent's demise. To be sure, her several counts against St. Ignatius alleged certain violations of the Structural Work Act and negligence for failure to maintain a reasonably safe work area. However, all counts require consideration of the force which proximately caused the scaffolding's failure. In this regard plaintiff Kerr was fully apprised.

Further, particular examination of the interrogatories to which St. Ignatius failed to timely respond reveals that they involved inquiry only as to a telephone call allegedly placed by an unidentified individual allegedly employed by Archer to St. Ignatius concerning payment for repainting defendant's truck as was necessitated by having been splattered with paint at the scene of the accident. Plaintiff had previously been informed by means of interrogatories to Archer that it was unaware of any information concerning such a call and that the truck had not been repainted subsequent to the accident. The record is devoid of any indication that plaintiff's preparation of her case was prejudiced by defendant's failure to respond to this set of interrogatories in a timely fashion.

■■  As was noted in *Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 361, 221 N.E.2d 410, 417, " * * * [d]iscovery rules work both ways, and by 'educating the parties in advance of trial as to the real value of their claims and defenses' [citation] the ascertainment of the truth and ultimate disposition of the lawsuit in accordance therewith is expedited." However, based upon the peculiar facts of the case at bar, vacation of the default and judgment for liability may be said to have worked toward the ends of substantial justice in disposing of this litigation on its merits without imposing an unreasonable burden upon plaintiff. Nor is there any indication of record that the delay occasioned by defendant's failure to comply with these discovery orders in the Kerr suit resulted in disruptive procedures in the Sansonetti suit or other cases awaiting trial. In light of the foregoing, the trial court's order was not an abuse of discretion.

Plaintiff Kerr also contends that the trial court erred in directing verdicts against her and in favor of all defendants.

In granting a motion for directed verdict trial courts are governed by the standard enunciated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. In *Pedrick,* it was held that verdicts ought to be directed and judgments notwithstanding verdicts ought to be entered only in cases in which all of the evidence, when viewed in the aspect most favorable to the party resisting the motion, so overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand.

In the instant case, plaintiff presented no direct evidence as to the agency which caused the scaffolding's failure. Therefore, we must find that plaintiff proffered no direct evidence to show that defendants' acts or omissions proximately caused that failure.

Plaintiff, however, contends that absent such direct evidence of the specific acts of defendants' wrongdoing, the jury would be entitled to arrive at a conclusion based upon reasonable inferences which flow from the circumstantial evidence. Within this context it is undisputed that Archer owned a panel truck assigned to and operated by its employee, Edwin J. Bylica, and his helper, Charles R. Cox; that the truck was used to deliver laundry to St. Ignatius High School on September 27, 1969; that while the truck was in St. Ignatius' parking lot on that date, Raymond Sansonetti and Louis Kerr were employed in repairing the building and to this end were manipulating a scaffold suspended from said building; that the panel truck was parked at this time approximately 8 feet from the scaffold wall "directly below" the scaffold such that the scaffold's fall lines were "right in back" of the truck; that as the scaffold was being lowered it violently tilted and threw Sansonetti and Kerr to the ground causing the latter's death and the former's injury; that the ropes of the scaffold were examined after the accident, appeared to be undamaged and that one

such rope was observed, after the accident, to be positioned across the truck's rear bumper.

Plaintiff's theory is that while Kerr and Sansonetti were absent from the scaffold area some part of defendant's truck was driven into or otherwise came into contact with the ropes which hung from the scaffold to the ground. This brief contact resulted in certain stress being applied to a top hook of the scaffold assembly which stress caused this hook to invert so that the scaffold was supported only by baling wire. When Sansonetti and Kerr returned to the scene and attempted to manipulate the scaffold the baling wire broke and the scaffold fell causing the death of Kerr and injury to Sansonetti.

■■ Plaintiff further contends that she has effectively eliminated any other cause of the failure based upon the results of experiments performed by her expert and urges that such evidence and the conclusions of this expert based upon this evidence were improperly excluded.

Defendant reiterates on appeal its assertion that such experiments were not performed under sufficiently controlled reconstruction of events and hence evidence derived from such tests and opinions based thereon were properly excluded. Defendant advances the theory that whatever force induced the scaffolding's failure was provided by Kerr and Sansonetti during their several manipulations of the scaffold apparatus.

Whether the testimony of a reconstruction expert and the expression of an opinion thereon is admissible is a question to be first determined by the trial court and such a determination requires the exercise of its sound discretion. (*Abramson v. Levinson* (1969), 112 Ill. App. 2d 42, 250 N.E.2d 796.) Before admitting such testimony it should be demonstrated that the expert has the necessary expertise in the specific area about which he expresses an opinion and that such area of inquiry requires the employment of scientific principles beyond the ken of the average juror. *Abramson v. Levinson.*

■■ As a matter of evidence, the rule in Illinois is well-settled that reconstruction experiments are incompetent unless the essential elements of the experiment are shown to be substantially similar to those existing at the time of the accident. (*Rockett v. Chevrolet Motor Division, General Motors Corp.* (1975), 31 Ill. App. 3d 217, 334 N.E.2d 764.) Absent such a showing the opinion of such an expert is worthless and may be characterized as mere conjecture, speculation and personal surmise. *Payne v. Noles* (1972), 5 Ill. App. 3d 433, 283 N.E.2d 329.

In the instant case there exist numerous discrepancies between the conditions surrounding the tests performed by plaintiff's expert and those present at the scene of the accident. It appears that the expert's tests did not utilize the scaffold stage or slings to support the scaffold stage as it

hung suspended on the wall. Consequently, the fall line was not "tied in" to the scaffold assembly as was the case on the date of the accident.

There is no evidence that the several blows struck by a hammer on the fall line were in any manner similar to the weight, force, and stress allegedly exerted by defendant's truck when it purportedly came into contact with the fall line as the scaffold assembly was suspended several stories above ground level. Even so, repeated blows of the hammer were required to produce the desired results. In view of these shortcomings, the expert's academic discussion of the cause of the accident was without proper foundation and was properly excluded.

Even assuming that stress exerted upon certain components of the scaffold assembly as it existed on the occasion of the accident was sufficient to cause its failure there does not exist a shred of evidence that defendant's truck in any way came into contact with plaintiff's scaffold apparatus. According to Sansonetti the truck was parked a distance of approximately 8 feet from the wall on which the scaffold was suspended and that the fall lines were apparently not in contact with but "right in back" of the truck. No testimony was adduced to connect the lines with the body of the truck prior to the accident. Sansonetti's observation of a rope atop the truck's rear bumper occurred subsequent to the accident.

It does not suffice to say that the verdict of a jury may not involve conjecture and speculation. Where facts are in dispute or the evidence is such that fair minded individuals might draw different inferences, a measure of conjecture and speculation is required on the part of the jury to settle the dispute by choosing the most reasonable inference. (*Zide v. Jewel Tea Co.* (1963), 39 Ill. App. 2d 217, 188 N.E.2d 383.) However, where there is a complete absence of probative facts to support a verdict in a party's favor, such a verdict must not be allowed to stand. *Lavender v. Kurn* (1945), 327 U.S. 645, 90 L. Ed 916, 66 S. Ct. 740.

■■ When the evidence adduced at trial in the case at bar is examined in light of the foregoing principles we believe that there is a complete absence of evidence to support the theory advanced by plaintiff so as to justify submission of this case to the jury. (*C. f. Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.)[1] Our review of the evidence leads us to conclude, in accord with the trial judge, that plaintiff failed to prove by satisfactory evidence that the accident was caused by stress exerted upon a particular component of the scaffold assembly or that such stress was induced by the negligent actions of Archer's employees or

---

[1] Such cases as are relied upon by plaintiff which predate *Pedrick* are inapplicable to the case at bar. Under such cases a motion for directed verdict presented the single question of whether there was *any evidence* in the record, which standing alone and taken with its intendments most favorable to the party resisting the motion, tended to prove the material elements of that party's case. This rule was superseded by *Pedrick*. See *McInturff v. Chicago Title & Trust Co.* (1968), 102 Ill. App. 2d 39, 243 N.E.2d 657.

St. Ignatius so as to render either Archer or St. Ignatius liable for breach of statutory of common law duties. We believe that it may fairly be said that all of the evidence of record, when viewed most favorably to plaintiff so overwhelmingly favors defendants that no contrary verdict based upon such evidence could ever stand. Consequently, the order of the trial court in directing verdicts against plaintiff and in favor of all defendants was justified. In view of our decision we find it unnecessary to consider other points of error urged by plaintiff Kerr.

Plaintiff Sansonetti also raises several points for appeal. He initially contends that the trial court erred in denying his petition for change of venue alleging prejudice of the trial court.

■■ The provisions of the Venue Act (Ill. Rev. Stat. 1969, ch. 146, par. 1 *et seq.*) are to be liberally construed in order to promote rather than defeat change of venue, and the right to change of venue on account of the alleged prejudice of the trial judge is absolute if the requirements of the statute are met. (*Fennema v. Joyce* (1972), 6 Ill. App. 3d 108, 285 N.E.2d 156.) Nevertheless, a petition for change of venue must be offered at the earliest practicable moment. A petition is untimely if offered after a hearing on the merits has occurred (*Ostro, Inc. v. Boydston Bros., Inc.* (1944), 323 Ill. App. 137, 54 N.E.2d 742) or after a trial judge has made rulings concerning matters of substance. *People v. Lawrence* (1963), 29 Ill. 2d 426, 194 N.E.2d 337.

In the instant case, the Sansonetti and Kerr cases were consolidated for discovery purposes and assigned to Judge Canel prior to the time the Kerr suit proceeded separately to trial. That case ended in directed verdicts in favor of defendants Archer and St. Ignatius. Three weeks after entry of judgment in the Kerr case, plaintiff Sansonetti filed his petition for change of venue. Judge Canel summarily denied the petition on the ground that he had previously ruled on "substantive issues involved in this cause." Our review of the record fails to reveal such a ruling. Consequently, the trial court erred in not granting plaintiff Sansonetti's timely motion for change of venue. As this is the case, all subsequent orders of the trial court are void and the judgment of the trial court may be reversed and remanded without consideration of the other issues raised by plaintiff Sansonetti. *Johnson v. Johnson* (1975), 34 Ill. App. 3d 356, 340 N.E.2d 68.

■■ However, plaintiff specifically requests in oral argument and in his brief that this court proceed to rule on the propriety of the trial court's decision awarding defendants summary judgment. In so doing plaintiff is deemed to have waived the error professed to have arisen from the trial court's denial of plaintiff's petition for change of venue. In the interests of judicial economy we will comply.

Based upon our foregoing analysis of the Kerr suit and the affidavits

submitted in connection with defendants' motions for summary judgment we conclude that the trial court properly entered summary judgments in favor of defendants since there exists no dispute between the parties on any material fact and defendants are entitled to judgment as a matter of law.

Judgments affirmed.

DOWNING and JIGANTI, JJ., concur.