EMMETT TURNEY, Plaintiff-Appellant, *v.* FORD MOTOR COMPANY, Defendant-Appellee.

First District (1st Division)   No. 79-2350

Opinion filed March 23, 1981.

Donald J. Parker, of Gann, McIntosh, Flaherty & Parker, of Chicago, for appellant.

Francis D. Morrissey, Thomas F. Tobin, and Edward J. Zulkey, all of Baker & McKenzie, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Emmett Turney brought an action based on strict liability in tort against Ford Motor Company for injuries sustained while operating a tractor manufactured by Ford. Judgment was entered on the jury verdict in favor of Ford. Turney appeals.

On appeal, Turney contends that (1) the trial court erroneously admitted evidence that safety equipment was available as an option; (2) the jury was improperly instructed on the relevancy of the availability of the optional equipment; (3) evidence of Occupational Safety and Health Administration regulations was improperly admitted; (4) accident reconstruction evidence was improperly admitted; (5) the issue of punitive damages should have been submitted to the jury; (6) the trial court erred in refusing to instruct the jury on the issue of failure to warn; (7) the tractor was unreasonably dangerous as a matter of law; (8) the trial court should have directed a verdict in plaintiff's favor; and (9) plaintiff's motion for a new trial should have been granted.

We affirm.

Plaintiff Emmett Turney was injured on June 11, 1973, while operating a tractor manufactured by Ford in 1970. Turney testified that as he was mowing grass near some trees in a picnic grove, the tractor struck a burl hidden by tall grasses. The tractor was jolted off the ground and Turney was thrown from the seat. He further testified that as he was falling, he tried to push himself away from the tractor. However, when he landed on the ground the left rear tire rolled over his back. His arm was severed, his ankle was crushed, and his leg and thigh were lacerated. Turney alleged in his complaint that the tractor was unreasonably dangerous because it lacked a roll bar and seat belt and that this unreasonably dangerous condition was the proximate cause of his injuries.

The evidence produced at trial indicated that in January 1967, the Farm Conference of the National Safety Council recommended that tractors be equipped with protective frames and crush resistant cabs so that fatalities occurring from tractor turnovers would be reduced. In March of this same year, the Farm and Industrial Equipment Institute Engineering Committee (the Committee) adopted the same resolution. The American Society of Agricultural Engineers (the Society), which purports to establish safety standards for the industry, adopted the Committee's recommendation that tractors be equipped with a protective frame or roll bar and a seat belt attached to the seat. The Society recommended these measures to protect drivers in tractor rollovers.

The roll bar and seat belt combination became known in the industry as a "roll-over protection system" (ROPS). Ford offered the ROPS as optional equipment on its tractors. After being called by plaintiff as an adverse witness, Richard Zich, Ford's expert witness, testified that Ford's Tractor Division Safety Committee recommended that the ROPS be made standard equipment on all tractors. However, Ford's Marketing Division decided to sell the ROPS as an option because they were not suitable for use in areas where overhead clearance was low. Ford therefore believed that sales would decrease if safety equipment was a standard feature.

Dr. Norvall Wardle, one of plaintiff's expert witnesses, had been involved at the University of Iowa with the engineering and educational aspects of farm safety. He had investigated thousands of farm accidents, many of which involved tractor rollovers. In Dr. Wardle's opinion, the tractor involved in this case was unreasonably dangerous because it lacked safety equipment which would protect an operator in the event of a tractor rollover. In response to a hypothetical question based on plaintiff's description of the accident, Dr. Wardle testified that there was a causal connection between the absence of the ROPS and plaintiff's injuries.

Dr. Marvin Salzenstein, an engineer and plaintiff's second expert witness, testified that Turney would not have been injured if a safety belt had been installed. He therefore concluded that there was a causal connection between the absence of safety equipment and Turney's injuries. He also suggested that an effective driver protection device could be designed which would permit use in low clearance areas.

Richard Zich was called by Ford as its expert witness. He testified that a roll bar is designed to provide an envelope of protection for the driver in the event a tractor overturns. If roll bars are not installed, a seat belt is not provided because if the tractor overturned and the driver were using the belt he would be crushed. He further stated that roll bars could not be made smaller to accommodate low clearance uses because smaller roll bars would not provide adequate driver protection. No expert identified any design alternative which would eliminate the incompatibility of roll bars and low clearance uses.

Zich further testified that the tractor in question had a wide wheel base and low center of gravity. It therefore could tilt up to 45 degrees before a rollover would be likely. The independent suspension of the front axle permitted each front wheel to separately move up or down approximately five to six inches without affecting the attitude of the tractor. Further testimony by Zich revealed that if the tractor struck an obstacle 12 inches high, the independent suspension would accommodate the first five to six inches. Then, due to the weight distribution of the tractor, the entire front axle would rise, rather than the right sides of the front and rear axles. If the rear wheel lifted as a result of the front wheel's contact with an obstruction, the tractor would have stalled because of the rear wheel differential. In this case, the tractor traveled forward until it reached a nearby ravine. Further testimony revealed that in rolling over an object 12 inches tall, the tractor seat would have moved approximately 6 inches.

Mr. Zich concluded that the tractor was in neutral when it rolled down the hill to the ravine because of the absence of skid marks. The lack of mowed grass in the tractor's path led him to conclude that the power take-off to the mower box which was towed by the tractor had been disengaged by the plaintiff as the tractor cleared the burl.

He further testified that the tractor involved in the case was a low-silhouette, multipurpose tractor. This type of tractor is exempt from the OSHA requirements of roll bar and seat belt when used in orchards because the overhead clearance was low when working around trees. Each of plaintiff's experts agreed that the Ford tractor qualified as a low-silhouette tractor exempted from the OSHA requirements. They also agreed that the certain uses of tractors prohibited the use of roll bars which were available.

First, Turney argues that the trial court erred in admitting evidence concerning the availability of safety devices as optional equipment. He contends that the evidence was used by Ford in an attempt to delegate its duty of providing a safe product to the purchaser of the tractor.

■■ The general rule is that a manufacturer has the duty to design a reasonably safe product and may not delegate that duty to the dealer, user, or purchaser of the product. (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232; *Robinson v. International Harvester Co.* (1976), 44 Ill. App. 3d 439, 358 N.E.2d 317, *rev'd on other grounds* (1977), 70 Ill. 2d 47, 374 N.E.2d 458; *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74.) In this case, however, Ford does not argue that Turney's employer, the purchaser of the tractor, was required to provide a safe product. Ford recognizes its duty and admits that it alone had the duty to produce a reasonably safe product. The rule noted above was therefore not violated since Ford did not attempt to replace its duty with that of another.

The availability of the ROPS was introduced in connection with the multifunctional nature of the tractor. Richard Zich testified that tractors such as the one in question were purchased for use on dairy and cattle farms, in factory yards, in orchards, and in greenhouses where low overhead clearance prohibited the use of roll bars. In other instances, a roll bar interfered with the installation of various tractor attachments. He further testified that for these reasons, among others, Ford decided to market the ROPS as optional equipment.

■■■ Evidence of the multifunctional nature of a product is admissible and is a factor for the trier of fact to consider in determining whether a product is unreasonably dangerous. (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) Here the availability of the ROPS was closely connected to the multifunctional nature and therefore was probative of the issue of whether the product was unreasonably dangerous. For the aforementioned reasons, we find that the trial court did not err in admitting evidence that the ROPS was available as an option.

Second, Turney argues that the jury was improperly instructed on the relevancy of defendant's evidence concerning optional safety equipment. Turney tendered the following instruction:

"Ford Motor Company has the obligation to manufacture and sell a product which is not in an unreasonably dangerous condition. Since that obligation cannot be delegated to another, it is not a defense for the manufacturer that another person, including plaintiff's employer did not purchase safety features which Ford sold as options.

When I use the term 'cannot be delegated' in these instructions,

I mean that the duty must be performed by Ford and cannot be left to some other person or individuals, including plaintiff's employer."

However, the trial court refused this instruction and instead instructed the jury as follows:

"Now the court instructs you that the Ford Motor Company has the obligation to manufacture and sell a product which is not in an unreasonably dangerous condition.

Since that obligation cannot be delegated to another, it is not a defense for the manufacturer that another person, including plaintiff's employer, failed to make it free from unreasonably dangerous conditions.

Now when I use the term 'cannot be delegated' in these instructions, I mean that the duty must be performed by Ford and cannot be left to some other person or individual, including the plaintiff's employer."

■■ The instruction given by the trial court correctly states Illinois law regarding the manufacturer's nondelegable duty to produce a reasonably safe product. Turney acknowledges this in his brief. The instruction states that Ford's duty was unaffected by the conduct of plaintiff's employer. This is essentially the same theory enunciated in plaintiff's tendered instruction. Therefore, the trial court did not err in instructing the jury.

Third, Turney cites as error the admission of Zich's reconstruction testimony. He contends that the jury did not require the aid of any scientific evidence because his testimony describing the incident was complete.

We do not believe that Ford should be silenced merely because Turney testified to a plausible version of events. In many products liability cases, expert testimony is the only means by which a defendant manufacturer is able to rebut the allegations of the plaintiff. As the court acknowledged in *Moore v. Jewel Tea Co.* (1969), 116 Ill. App. 2d 109, 144, 253 N.E.2d 636, 652-53, *affirmed* (1970), 46 Ill. 2d 288, 263 N.E.2d 103, defendants in products liability cases cannot be expected to produce eyewitnesses to an occurrence.

■■ The testimony and opinion of a reconstruction expert may be admissible where the facts and circumstances of the particular case are such that the expert's opinion will aid the jury in arriving at a just verdict. (*Pritchett v. Steinker Trucking Co.* (1969), 108 Ill. App. 2d 371, 247 N.E.2d 923.) The decision to admit expert testimony rests within the sound discretion of the trial court. *Northern Trust Co. v. Skokie Valley Community Hospital* (1980), 81 Ill. App. 3d 1110, 410 N.E.2d 1246; *Sansonetti v. Archer Laundry, Inc.* (1976), 44 Ill. App. 3d 789, 358 N.E.2d 1142.

■■ Here, the trial court did not abuse its discretion. The testimony of Richard Zich describing the tractor's reaction upon striking the burl was one of the few ways which Ford could use to prove that the tractor was not unreasonably dangerous. Under the circumstances of this case, we find that Zich's testimony was properly admitted to aid the jury in its determination. Admittedly, portions of Zich's reconstruction testimony were contradicted by the other evidence. However, discrepancies in testimony and evidence are matters for the jury's consideration, and the jury is free to disregard an expert's conclusion of fact. *Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 388 N.E.2d 844.

Fourth, Turney argues that it was reversible error to permit defendant's cross-examination regarding Occupational Safety and Health Act (OSHA) regulations relating to tractors. He argues that the regulations were irrelevant because they apply to employers, not manufacturers, and that government prohibitions cannot be used in strict liability cases to rebut the charge that a product is unreasonably dangerous.

We first note that plaintiff did not specifically object to the cross-examination of Dr. Wardle regarding OSHA regulations. Defendant asked if there had been any congressional action in the field of tractor safety. Plaintiff objected but was overruled. Wardle responded that the government through OSHA had promulgated regulations requiring the use of roll bars. Defendant asked several questions based on the OSHA regulations, Wardle answered, and plaintiff did not object. Plaintiff raised no other objections until defendant tendered, for Dr. Wardle's perusal, OSHA regulations relating to instances where roll bars were not required. A failure to object results in a waiver of the issue. *Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 364 N.E.2d 660.

■■ Assuming that the issue is properly before us, we nonetheless find that the evidence was properly admitted. In *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534, the court held that a defendant in a strict products liability action may show that a given alternative design is not required by Federal regulations and that such evidence is relevant in determining whether a defect is unreasonably dangerous. In *Pyatt v. Engel Equipment, Inc.* (1974), 17 Ill. App. 3d 1070, 309 N.E.2d 225, *appeal denied* (1974), 56 Ill. 2d 591, the court found that evidence of standards imposed on employers was not barred merely because the action was against the manufacturer, not the employer. Evidence of OSHA standards was properly admitted in this case as a factor for the jury to consider in determining whether Ford manufactured a reasonably safe product.

Fifth, Turney argues that the trial court erred in striking the punitive damages count at the close of plaintiff's case. Turney had alleged that Ford was guilty of wilful and wanton misconduct in that it consciously

and knowingly elected to disregard knowledge of the fact that a failure to equip tractors with rollover protection rendered the tractors unreasonably dangerous for its intended use. He further alleged that Ford manufactured and sold tractors without safety equipment with a reckless disregard for the safety of operators.

In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359, the court stated:

> "It has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. (*Consolidated Coal Co. v. Haenni* (1893), 146 Ill. 614.) Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future. (*Eshelman v. Rawalt* (1921), 298 Ill. 192, 197.) And, while the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law. *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 87."

The trial court's decision to allow or dismiss a punitive damages claim will not be reversed in the absence of an abuse of discretion. *Shaw v. Miller* (1978), 64 Ill. App. 3d 743, 381 N.E.2d 985; *Zokoych v. Spalding* (1976), 36 Ill. App. 3d 654, 344 N.E.2d 805.

■■ We find no abuse of discretion by the trial court in dismissing the punitive damages claim. The record indicates that at the time the tractor was manufactured, there were no means of affixing roll bars which would permit low clearance uses. Ford was aware of this fact. However, Ford, in an effort to have the ROPS used where appropriate, sold the ROPS at a loss. Furthermore, Ford sought to design tractors with greater stability, thereby decreasing the chances of tractor rollovers. In fact, the record reveals that in the 10 years between the time the tractor was manufactured and the time of trial, only 6 tractors of this general design had been involved in rollover incidents. Ford did not recklessly disregard the safety of others in designing and manufacturing the tractor.

Sixth, Turney argues that the trial court erroneously refused his tendered instruction concerning defendant's failure to warn of the hazards in using a tractor unequipped with the ROPS.

■■ In his motion for a new trial, plaintiff alleged that "the Court erred in failing to give the following instructions tendered by the Plaintiff: 9, 10, 11, 12, 15, 16, 17, 18 and 19." Our supreme court recently has held that similar allegations of error in a post-trial motion were inadequate under

sections 68.1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68.1(2)) and Supreme Court Rule 366 (73 Ill. 2d R. 366(b)(2)(iii)) because they did not apprise the trial court of the grounds supporting the error. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337, citing *Sny Island Levee Drainage District v. Meyer* (1963), 27 Ill. 2d 530, 190 N.E.2d 356.) *Brown* further held that the lack of specificity results in a waiver of the issue on review. We therefore find that this issue was waived and we decline to reach its merits.

Turney further contends that as a matter of law, the tractor causing his injuries was unreasonably dangerous when it left Ford's control and that the trial court should have directed a verdict in his favor at the close of all the evidence.

To recover in a strict products liability action, a plaintiff must prove that (1) the product was in an unreasonably dangerous condition; (2) the condition existed at the time the product left the manufacturer's control; and (3) the condition was the proximate cause of plaintiff's injuries. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) In *Hunt* the court further noted:

> "A manufacturer is not under a duty in strict liability to design a product which is totally incapable of injuring those who foreseeably come in contact with the product. Products liability does not make the manufacturer an insurer of all foreseeable accidents which involve its product. Virtually any product is capable of producing injury when put to certain uses or misuses. * * * Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 467.) The injuries must derive from a distinct defect in the product, a defect which subjects those exposed to the product to an *unreasonable* risk of harm. The Restatement (Second) of Torts concludes that strict liability applies only when the product is 'dangerous to an extent *beyond* that which would be contemplated by the ordinary [person] * * *, with the ordinary knowledge common to the community as to its characteristics.' (Emphasis added.) Restatement (Second) of Torts sec. 402A, comment *i* (1965)." 74 Ill. 2d 203, 211-12, 384 N.E.2d 368, 372.

■■ Whether a plaintiff has proved the elements of his strict liability claim is a question for determination by the trier of fact. (*Richelman v. Kewanee Machinery & Conveyor Co.* (1978), 59 Ill. App. 3d 578, 375 N.E.2d 885; *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 373 N.E.2d 1354.) More specifically, the question of whether a defendant's

product is unreasonably dangerous for failure to incorporate certain safety devices is a question to be decided by a jury. (*Kuziw v. Lake Engineering Co.* (7th Cir. 1978), 586 F.2d 33; *Mahoney v. Roper-Wright Manufacturing Co.* (7th Cir. 1973), 490 F.2d 229; *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825.) The trial court may direct a verdict or grant judgment notwithstanding the verdict only when all of the evidence viewed in a light most favorable to the nonmovant so overwhelmingly favors the movant that no contrary verdict could stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Ford submitted substantial evidence of the design features engineered into the tractor to minimize its instability. It also introduced evidence of the tractor's multifunctional nature. These factors were relevant in determining whether the tractor was unreasonably dangerous. ■■ Furthermore, there was evidence from which the jury could conclude that Ford's failure to equip the tractor with a ROPS was not the proximate cause of Turney's injuries. The evidence indicates that roll bars were designed to support the weight of the tractor in an inverted position. They are mounted behind the driver and are not intended for use as handlebars. Here, the tractor did not overturn. Gregory Dillon, Turney's co-employee, testified that when he arrived at the scene immediately after the accident, Turney stated that he jumped from the tractor. Also, Richard Zich's reconstruction testimony presented evidence which, if believed by the jury, indicated that there was no causal connection between the lack of a ROPS and Turney's injuries. In view of the foregoing evidence, we find that the trial court properly permitted the jury to determine the issues and did not err in denying plaintiff's motion for a directed verdict.

Finally, Turney contends that because of the trial court's errors cited, he should have been granted a new trial. In view of our decision in this case, we find that plaintiff's motion was properly denied.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.