CHERYL LYNN JONES, Adm'r of the Estate of Thomas Jones, Deceased, Plaintiff-Appellant, v. BLACK AND DECKER MANUFACTURING COMPANY, Defendant-Appellee.

First District (4th Division) No. 1—89—0823

Opinion filed August 23, 1990.

Robert A. Rosin & Associates, Ltd., of Chicago (Robert A. Rosin, of counsel), for appellant.

French, Kezelis & Kominiarek, P.C., of Chicago (Algimantas Kezelis, Russell P. Veldenz, and Randall J. Gudmundson, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

In this strict liability wrongful death action brought by the plaintiff, Cheryl Lynn Jones, the trial court entered judgment in favor of the defendant, Black & Decker Manufacturing Company, on the jury verdict. On appeal, the plaintiff asserts that the trial court improperly allowed evidence of governmental mining industry standards and made prejudicial comments during the proceedings.

On June 3, 1975, Thomas Jones collapsed and died while working in a coal mine. At the time of his death, Jones was using an impact wrench, manufactured by Black & Decker. The plaintiff, Cheryl Jones, asserts that the decedent died because he received an electrical shock from the impact wrench when an internal screw came loose and contacted the positive terminal of the switch mechanism, electrically charging the tool.

The impact wrench that Jones was using at the time of his death was manufactured by Black & Decker on December 10, 1969. As manufactured, the wrench was equipped with a three-pronged plug that was intended to be used with a three-pronged electrical outlet. The third prong of the plug was attached by way of a ground wire to the metal housing of the tool. The three-prong system was intended, when used with a three-pronged electrical outlet, to provide protection against electrical shock if the wrench housing became electrically charged, as it did in the present case. At the time of the accident the mining operator had removed the three-pronged plug from the tool, effectively circumventing the grounding protection of the three-prong system.

Electrical shock to the user as result of an electrical charge to the tool can also be prevented through double insulation of the tool. Double insulation is a layer of insulation aside from the functional insulation in the tool. Double insulation is intended to prevent electrical shock occurring as a result of an internal fault in the tool. Under a theory of strict products liability, the plaintiff, Cheryl Jones, argued that the condition of the impact wrench was unreasonably dangerous when it left Black & Decker's control because it did not contain double insulation. Jones maintained that the subversion of the three-pronged grounding system was reasonably foreseeable and that double insulation would have prevented electrical shock to the user despite the absence of a completed grounding circuit.

On appeal, Jones contends that the trial court erred when it al-

lowed Black & Decker to introduce evidence that Federal coal-mining regulations required that tools used in coal mines be grounded. At trial, Black & Decker's witness, on direct examination, testified that Black & Decker could not have sold a double-insulated tool to a mine in the years 1969 through 1975 because Federal mine safety regulations required grounding of portable electric tools in mines. Other evidence would indicate that the regulations to which the witness referred did not become effective until after the date the impact wrench in this case was manufactured. The Black & Decker witness concluded that because of the Federal regulation, Black & Decker was compelled to provide a grounding wire on the impact wrench.

Jones objects to the introduction of the Black & Decker witness' testimony on the grounds that the standards evidence was not relevant. Jones asserts that the regulations to which the witness referred did not go into effect until after the impact wrench in this case was manufactured. Jones also maintains that because the regulations the witness referred to did not relate to design criteria for electric tools, but rather pertained to the use of electric tools by mining operators, the testimony was improperly admitted. Jones cites to *Ruffiner v. Material Service Corp.* (1987), 116 Ill. 2d 53, 506 N.E.2d 581, for the general proposition that industry standards, to be admissible, must be relevant in terms of time and conduct involved.

█▌ █ Black & Decker asserts that evidence of Federal mining regulations is relevant in that it is some evidence from which the jury could infer that the impact wrench was not unreasonably dangerous when it left the manufacturer. We agree. A defendant in a strict products liability action may show that a given alternative design is not required by Federal regulations. (*Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 418 N.E.2d 1079.) Such evidence is relevant in determining whether a product is unreasonably dangerous. Further, the evidence of standards is not barred merely because the standards apply to the employer and not the manufacturer. (*Turney v. Ford Motor Co.*, 94 Ill. App. 3d 678, 418 N.E.2d 1079.) Where, as in the present case, the manufacturer is not attempting to shift its duty to the employer, but rather addressing the issue of the reasonable safety of the product, the evidence of Federal mining regulations was properly admitted as a factor for the jury's consideration.

Jones also contends that she was deprived of a fair trial by virtue of comments the trial court made during the presentation of evidence. During the trial, Black & Decker called Dr. William Buckingham as an expert witness. Dr. Buckingham addressed the issue of whether Jones in fact died of an electric shock. Dr. Buckingham testified that, in his

opinion, the decedent did not die from an electrical shock. As one of the bases for his opinion, Dr. Buckingham noted that at the time of the occurrence, a nearby co-worker did not observe any sparks at the time of the accident. After Jones repeatedly cross-examined Dr. Buckingham regarding the absence of sparks and its significance, the court, in sustaining an objection from Black & Decker, stated: "I am sure he is not testifying out of the blue. He is testifying as a medical expert."

Jones asserts that the court's remark could be interpreted by the jury as an endorsement of the expert's opinion. Jones cites *Ryan v. Blakey* (1979), 71 Ill. App. 3d 339, 389 N.E.2d 604, in asserting that the court should be conscious of its role as a dominant figure in the courtroom and aware that an inadvertent comment on the evidence or its attitude of belief or disbelief can influence the jury. Jones argues that as proximate cause and foreseeable use were contested issues in the case, the court's comments and "restriction of evidence" were prejudicial and deprived Jones of a fair trial.

■■ ■ We do not believe that the court's remarks were of such a character as to constitute prejudice in the minds of the jurors. (*Crump v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 398 N.E.2d 188.) The scope of cross-examination of a witness is within the discretion of the trial court. (*Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 463 N.E.2d 216.) In the present case, it appears from the record that the court's remarks were prompted by the cross-examination exchange between Jones and Dr. Buckingham. Jones made repeated attempts to question Dr. Buckingham about how the presence or absence of sparks relates to death by electric shock. Jones posed what was essentially the same question several times. In some instances Black & Decker's objections to Jones' questioning were sustained by the trial court, but ultimately Dr. Buckingham was allowed to respond two or three times to questions about his reliance on the fact that no sparks were observed at the time of the accident. Within this context, the court's remarks were not of such a nature as to create prejudice in the jurors' minds. For these reasons, the decision of the trial court is affirmed.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.