THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DENNIS WILBUR, Defendant-Appellant.

Third District   No. 3—90—0310

Opinion filed March 27, 1992.

STOUDER, J., dissenting.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (Nancy Rink Carter and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

The defendant is a 14-year-old tried as an adult for the murder of a neighbor woman in 1988. He made a full confession to killing her by cutting her throat and stabbing her 15 to 20 times. The defendant showed no remorse, and according to his parents, did not appear upset after the killing. The defendant suffers from learning disabilities. There is conflicting evidence as to whether he suffers from periodic violent outbursts. The defendant raised the defense of insanity, and his expert testified that the defendant was, in fact, insane at the time of the murder and was suffering from schizophrenia. The State's expert testified that the defendant was sane at the time of the commission of the crime. The State asked for a guilty but mentally ill instruction, and the court instructed the jury on verdicts of guilty, not guilty, not guilty by reason of insanity, and guilty but mentally ill (GBMI). The jury returned a verdict finding the defendant guilty but mentally ill, and the court sentenced the defendant to 60 years. The defendant appeals, raising issues of the questioning of the jury in *voir dire*, the court's giving of the guilty but mentally ill instruction on the evidence presented in this case, the impropriety of the prosecutor's closing argument, and the court's abuse of discretion in imposing a sentence of 60 years. We affirm.

First, the defendant contends the trial court erred in conducting *voir dire*. The defendant made a motion prior to trial requesting the court to question prospective jurors about their beliefs as to (1) the State's burden of proof; (2) that the defendant is presumed innocent; (3) that the defendant does not have to present any evidence on his behalf; (4) that the defendant's failure to testify may not be held against him; and (5) that the defendant assumes the burden of proving insanity. The court held a conference with the attorneys in chambers and agreed to explore these topics with prospective jurors. The court also agreed to allow the attorneys to ask prospective jurors any follow-up questions they felt might be necessary. The defendant made no objection during *voir dire* to the sufficiency of the questions posed by the judge, but did allege the questions were insufficient in his post-trial motion.

In particular, the defendant alleges that the court did not adequately explore the question of whether the possible veniremen would

hold the defendant's failure to testify against him. The judge admonished the veniremen as follows:

> "I am going to instruct you at the end of this case about the law, and I will be asking you if you can follow the law, if you will follow the law as I give it to you, and apply the law to the facts as you find the facts to be ***. First of all, you should know the defendant is presumed innocent until he is proven guilty beyond a reasonable doubt by the State. The Defense need not produce any evidence, whatsoever, rather it is up to the State to produce evidence to convince you of the Defendant's guilt."

In *People v. Zehr* (1984), 103 Ill. 2d 472, the defendant tendered *voir dire* questions to the court dealing with the right of the defendant not to testify and the burden of proof. The court refused to ask the submitted questions. The court ruled that the proposed question violated the dictates of Supreme Court Rule 234; "Questions shall not directly or indirectly concern matters of law or instructions." (87 Ill. 2d R. 234.) The Illinois Supreme Court reversed the defendant's conviction. The court ruled that the defendant had the right to probe the undisclosed prejudices of prospective jurors. By failing to broach these questions to the veniremen, the defendant was denied his right to a fair and impartial jury.

The court also went on to note that the questions need not be asked in the manner requested by the defendant. Inquiries made of potential jurors are sufficient if they reasonably explore any prejudices prospective jurors might possess which would deprive the defendant of his basic constitutional right to a fair trial. (*Zehr*, 103 Ill. 2d at 477.) The court specifically rejected the notion that any one set of "patterned" questions is required.

■ In the case at bar, the court did broach to potential jurors questions concerning (1) the State's burden of proof; (2) the presumption of innocence; and (3) that the defense need not present any evidence whatsoever. In addition, the court allowed counsel to ask follow-up questions during *voir dire*. It is true the court did not ask the questions as tendered by the defendant, but a thorough review of the record before us reveals that the trial court's inquiries were sufficient.

■ Next, the defendant asserts that there was insufficient evidence to support a verdict of GBMI. The defendant's expert, T.W. Mathews, opined that the defendant was unable to conform his behavior to the law. Mathews based his opinion on the fact that defendant heard "voices" and suffered from schizophrenia (a mental disease).

The State's expert, Robert Chapman, testified that he was not "floored" by Mathews' opinion, but he felt the defendant was not legally insane (*i.e.*, he opined the defendant was able to conform his acts to the law). The question becomes whether the jury was free to accept Mathews' opinion that the defendant suffered from a mental disease and simultaneously reject his conclusion that the defendant was insane.

The testimony of experts is judged by the same rules of weight and credibility which are applied to other witnesses. (*Cannell v. State Farm Fire & Casualty Co.* (1975), 25 Ill. App. 3d 907, 912, 323 N.E.2d 418, 422.) Discrepancies in testimony in evidence are matters for the jury's consideration, and the jury is free to disregard an expert's conclusions of fact. (*Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 685, 418 N.E.2d 1079, 1085.) The weight to be accorded an expert's opinion is measured in part on the factual details supporting his conclusions (*People v. Kuhn* (1979), 68 Ill. App. 3d 59, 64, 385 N.E.2d 388, 391), and the jury is not required to accept the opinions of experts concerning the defendant's sanity. *People v. Martin* (1980), 87 Ill. App. 3d 77, 81, 409 N.E.2d 114, 118.

In *People v. Hood* (1990), 203 Ill. App. 3d 289, 560 N.E.2d 1187, for example, the defendant presented four expert witnesses who all opined the defendant was legally insane at the time of the offense. The State presented one expert who opined the defendant was not legally insane at the time of the offense. The trial court instructed the jury as to GBMI. The jury found the defendant "guilty but mentally ill." The first district affirmed. The court ruled that a GBMI verdict may be predicated upon evidence presented by the defendant. The court held that the jury was free to accept the defense experts' opinion that the defendant was mentally ill and simultaneously reject their conclusion that she was legally insane. We agree.

The State's Attorney, during his closing argument, argued that the defendant had the burden of proving his insanity. That is clearly a correct statement of the law as it applies to the insanity defense to the charge of murder. The problem lies in this case with the fact that the legislature had not yet amended the guilty but mentally ill statute to place the proving of mental illness on the defendant by a preponderance of the evidence so that it was in total accord with the raising of the insanity defense.[1] The burden of the State at the time this case

---

[1]Effective January 1, 1990, the legislature has amended the guilty but mentally ill statute to place the burden of proving mental illness on the defendant by a preponderance of the evidence. Ill. Rev. Stat. 1989, ch. 38, par. 115—4(j).

was tried was to prove all the elements of the crime beyond a reasonable doubt. The supreme court has commented on the statutory scheme in *People v. Fierer* (1988), 124 Ill. 2d 176, as follows:

"Under the new enactment, the defendant now bears the burden of proof of insanity by a preponderance for purposes of a not guilty by reason of insanity verdict, while at the same time the State bears the burden of proof of noninsanity beyond a reasonable doubt for purposes of the GBMI verdict." 124 Ill. 2d at 185.

The defendant appears to argue that the State cannot separately and independently comment on the insanity defense he raises and the State's burden of proving noninsanity for the purposes of guilty but mentally ill without in some way prejudicing him. The State's argument to the jury that the defendant bore the burden of proving his insanity was clearly legally correct for purposes of his assertion of the defense of insanity, and the defendant concedes that if insanity was the only issue, the argument was acceptable. The jury instructions tendered by the court to the jury correctly stated the burden of proof on insanity and guilty but mentally ill. The defendant would require that the State argue the defendant's total defense of insanity and the guilty but mentally ill requirements simultaneously. There is no such requirement.

There was no objection to the State's argument, so in order for it to be reviewable now, it would have to be determined to be plain error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) We do not believe the State's argument represents plain error. We further point out that in order for the complaint regarding the argument to be the basis of a reversal it must have resulted in substantial prejudice so that the verdict would have been different had it not been made. (*People v. Morgan* (1986), 112 Ill. 2d 111, 132.) We decline to take an unobjected-to correct statement of the law as it applies to the insanity defense out of context and apply it to the guilty but mentally ill requirements to find error.

■ Lastly, the defendant contends that the trial judge abused his discretion in imposing the maximum nonextended-term sentence of 60 years on him. Defendant claims that the trial court discounted mitigating factors regarding the 14-year-old defendant and found aggravation in a situation that, due to the verdict of guilty but mentally ill, was questionable as a deterrent. The trial court is entitled to great deference in sentencing under our scheme provided that the sentence is based on the particular circumstances of each case. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In this case, the

record reflects that the court properly considered all the statutory factors, and based on the attack on the victim of this crime, which the court characterized as brutal and heinous, given the defendant's admitted attack on a woman with a knife in 1988 and evidence of his deterioration since he was in custody, it cannot be said that the 60-year sentence imposed is a clear abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 281, 412 N.E.2d 541, 548.

For the foregoing reasons, this court affirms the defendant's conviction and sentence.

Affirmed.

GORMAN, J., concurs.

JUSTICE STOUDER, dissenting:

On appeal, the defendant contends the trial court erred in allowing the jury to be instructed on the verdict of guilty but mentally ill. He contends the instruction prejudiced the presentation of the insanity defense, and that there was no evidence to support such an instruction.

In the instant case, Mr. Theodore Mathews, a clinical psychologist, testified that in his opinion the defendant suffered from a schizophrenic condition which rendered the defendant incapable of conforming his conduct to the requirements of the law. Dr. Robert Chapman, a psychiatrist, on the other hand, found no evidence the defendant was suffering from a mental disease or defect. He found the defendant was able to appreciate the criminality of his conduct. Chapman testified he had no reason to believe the defendant could not control his behavior.

Following the close of evidence, the trial court allowed, over the defendant's objection, the State's request that the jury be given the instruction on guilty but mentally ill (GBMI). In closing arguments the prosecutor advised the jury numerous times to reject the "popular myth" that someone who would commit this type of brutal murder must be "sick." Relying on Dr. Chapman's testimony, the prosecutor argued the defendant was not mentally ill, let alone insane. He repeatedly argued that the burden was on the defendant to prove he "couldn't help himself."

In light of the foregoing facts, I believe the judgment should be reversed. The applicable law at the time of trial required the defendant to prove by a preponderance of the evidence that he was not guilty by reason of insanity. (Ill. Rev. Stat. 1989, ch. 38, par. 6—2(e).)

In order to obtain a verdict of guilty but mentally ill, the State was required to prove beyond a reasonable doubt (1) the defendant committed the acts charged, (2) the defendant was not legally insane at the time of the commission of those acts, but (3) the defendant was mentally ill. Ill. Rev. Stat. 1987, ch. 38, par. 115—4(j); *People v. Fierer* (1988), 124 Ill. 2d 176, 529 N.E.2d 972.

In the instant case, the only way the jury could have found the defendant guilty but mentally ill on the evidence presented was to accept the testimony of Mr. Mathews that the defendant suffered from a schizophrenic condition, but reject Matthews' opinion that the condition rendered the defendant incapable of conforming his conduct to the requirements of the law. At the same time the jury had to accept Dr. Chapman's opinion that the defendant could conform his conduct, but reject the underlying opinion that the defendant suffered no mental disease or defect.

Considering the nature of this testimony, I believe it is error to allow the jury to pick and choose what portions of expert psychological testimony to accept or reject. Especially in this case, where the only testimony concerning mental illness was tied inextricably to the opinion of insanity. There was no evidence presented that the defendant was mentally ill and yet sane. The testimony did not meet the definition of mental illness as defined in section 6—2(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 6—2(d)) as "a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law."

Under the GBMI statute, the State bore the burden to prove beyond a reasonable doubt that the defendant was mentally ill, and yet the State completely failed to present any evidence of mental illness. The only evidence presented by the State was that the defendant was not mentally ill. The State therefore failed to carry its burden under the GBMI statute, as the statute read at the time of this trial.

In closing arguments the prosecutor argued the defendant was not mentally ill and that he was sane. The defense argued the defendant had a mental illness which rendered him insane. There was no mention of the guilty but mentally ill option during closing arguments. With no basis in evidence, the jury was allowed to reach a compromise verdict.

The majority's conclusion on this issue leads to the result that anytime the insanity defense is raised, a guilty but mentally ill in-

struction is in order. The insanity defense then becomes a trap for the unwary and leads to compromise verdicts as in the case before us. The insanity defense will for all intents and purposes be rendered meaningless.

In addition, I find the prosecutor's closing arguments misleading *vis-a-vis* the burden of proof. Though the defendant concedes the issue is waived, I would reach the issue on plain error grounds. Having injected the GBMI matter into the proceedings, it was erroneous for the prosecutor to argue in ambiguous terms that the burden was on the defendant, when under the instructions given the burdens of proof were conflicting and flipped back and forth. The prosecutor's argument failed to distinguish between the defendant's burden to prove his insanity, and the State's burden to prove the defendant's sanity and mental illness. The majority is wrong when it states that the defendant would have the State argue the defendant's "total defense." First the defendant denies this supposition in his reply brief. Second, the GBMI theory of the case was not advanced by the defendant but by the State over the defendant's objection. Given the State was advancing this theory, it was incumbent upon the prosecutor not to muddy the waters, but to clearly set forth the State's two arguments: either the jury was to find the defendant guilty or guilty but mentally ill.

I also believe the issues instruction in the instant case was erroneous because it provided for contradictory burdens of proof which were totally irreconcilable. First the jury was to determine whether or not the defendant was guilty of the offense of murder beyond a reasonable doubt. To find this, the jury was to determine if the State had proven the defendant (1) committed the acts alleged and (2) had the requisite intent. If and only if the jury found both of these elements beyond a reasonable doubt was the jury to determine if the defendant had proven his insanity by a preponderance of the evidence. That is, did the defendant's mental state prevent him from forming the necessary intent.

If the jury found that the defendant had failed to carry his burden, then it was instructed to continue its deliberations to determine whether the defendant was guilty but mentally ill. In line with the GBMI statute, the jury was instructed that to find the defendant guilty but mentally ill, the State had to prove beyond a reasonable doubt that the defendant was guilty of first degree murder, that the defendant was not legally insane at the time of the murder and that the defendant was mentally ill at the time of the murder.

Section 4—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 4—3(a)) states that before an individual can be found guilty of an offense (other than absolute liability offenses), as to each element of the offense he must act with the necessary mental state. Section 6—2(a) of the Code defines insanity thus: "A person is not criminally responsible for *conduct* if at the time of such *conduct*, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his *conduct* or to conform his *conduct* to the requirements of law." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 6—2(a).

The instruction in the instant case required the jury to first find the defendant committed the acts and had the requisite intent beyond a reasonable doubt. Only then could the jury deliberate on whether the defendant had proven his insanity by a preponderance of the evidence. This however would be impossible because the jury had already found beyond a reasonable doubt that he had the necessary intent, in other words he was sane. How could the defendant prove his insanity (that he lacked the requisite intent) by a preponderance of the evidence, when the intent element has already been found beyond a reasonable doubt? In sum, how in the instant case the defendant could be found to have the necessary intent to commit murder, and then be found not to have the ability to form that intent because he is insane, is beyond me.

Secondly, there is the same problem under the GBMI instruction given. Under the instructions, the defendant had the burden of proving his insanity by a preponderance of the evidence while the State had the burden to prove beyond a reasonable doubt the defendant was not insane. The burden under GBMI statute when considered in relation to the burden under the insanity defense is relatively inseparable. In sum, the instructions were so confusing they constituted reversible error.

For the foregoing reasons, I would reverse.