# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Heindl*, 2014 IL App (2d) 130198

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF KEITH J. HEINDL, Petitioner-Appellee, and VICTORIA E. HEINDL, Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0198 |
| Filed | May 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal from a marriage dissolution action, the appellate court rejected respondent's contentions that the trial court violated Supreme Court Rule 13 by entering orders prejudicial to her shortly after her counsel was allowed to withdraw, that her motion for interim attorney fees prevented her from hiring counsel, and that her request for a continuance due to a recent surgery was improperly denied, since the orders entered within 21 days of the date her counsel was allowed to withdraw were not prejudicial to respondent, her petition for interim attorney fees was not verified or supported by an affidavit or other nontestimonial matter, and she did not submit any affidavits or medical evidence supporting her claim that she could not proceed with the trial, she admitted that she drove herself to court, and she was able to perform "admirably" in court. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-D-1211; the Hon. David P. Kliment, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Randy K. Johnson, of Law Office of Randy K. Johnson, of West Dundee, for appellant.

Kiley M. Whitty, of Anderson & Associates, P.C., of Wheaton, for appellee.

Panel        JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Zenoff and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1      Petitioner, Keith J. Heindl, and respondent, Victoria E. Heindl, married in 1992. In 2010, Keith petitioned to dissolve the marriage. On January 4, 2013, after a trial, the court entered the dissolution judgment. Victoria appeals, arguing that her due process rights were violated where the court, after her counsel withdrew and in violation of Illinois Supreme Court Rule 13 (eff. July 1, 2013), entered a series of orders prejudicial to her. Further, Victoria argues that the court erred where it denied her request for interim attorney fees so that she could hire counsel. Finally, Victoria argues that the court abused its discretion where it denied her request to continue the trial on account of a recent surgery. For the following reasons, we affirm.

¶ 2                         I. BACKGROUND

¶ 3      Preliminarily, we note that there was no court reporter at trial. Accordingly, the parties submitted competing bystander's reports to the trial court. On April 18, 2013, the court certified the report that Keith submitted as more consistent with the court's recollection and notes from trial, and it struck the report that Victoria had submitted. Nevertheless, Victoria's report appears in the record. In a motion taken with this appeal, Keith moves to strike Victoria's uncertified bystander's report. While Victoria did not cite to the uncertified report in her brief, we grant Keith's motion. The following facts are, therefore, derived from the common-law record, transcripts of posttrial proceedings, and the certified bystander's report.

¶ 4      On August 26, 2010, Keith filed the dissolution petition. Two years later, on August 28, 2012, Victoria's second attorney, Pamela Brunkalla, moved on Victoria's behalf to compel certain discovery and to continue the trial, which was scheduled for October 3 and 4, 2012. Then, on September 5, 2012, Brunkalla filed notice of a motion to withdraw, informing Victoria: (1) of Brunkalla's intention to withdraw; and (2) that, pursuant to Rule 13(c)(2), she should within 21 days retain new counsel or file an appearance. The notice also stated:

> "PLEASE NOTE THAT THIS MOTION TO WITHDRAW HAS BEEN COMBINED WITH A PETITION FOR INTERIM ATTORNEY'S FEES AND COSTS AND OTHER ITEMS. I AM ATTEMPTING TO GET FEES TO COMPLETE THE

ACCOUNTING EXAMINATION EVEN IF I AM NO LONGER ON THIS CASE." (Emphasis in original.)

¶ 5 Consistent with the above notice, the record reflects that, on September 5, 2012, Brunkalla petitioned: (1) to withdraw; (2) "if Pamela Brunkalla is not given leave to withdraw," for interim attorney fees under section 501(c-1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/501(c-1) (West 2010)); (3) regardless of whether Brunkalla was allowed to withdraw, that Keith be ordered to pay a private entity for its investigation and report regarding the parties' assets and liabilities; (4) regardless of whether Brunkalla was allowed to withdraw, that the trial be postponed; (5) regardless of whether Brunkalla was allowed to withdraw, that the judge conduct an *in camera* interview with the parties' minor child regarding visitation; and (6) to conduct further discovery. The petition noted that Victoria was unemployed and without funds to pay any additional fees. Brunkalla noted that she wished to withdraw because of a breakdown in communication with Victoria and due to Victoria's nonpayment of Brunkalla's fees and costs. Victoria signed and verified the petition. Keith responded to the petition for fees and disagreed that Victoria was without funds or access to funds to pay fees.

¶ 6 On September 12, 2012, the court, apparently without Victoria present, allowed Brunkalla to withdraw and gave her leave to file a final attorney-fee petition. The order noted that a copy of the order should be sent to Victoria and that she was granted "21 days to file her appearance or obtain other counsel." The court struck the existing October trial dates and scheduled trial for December 20 and 21, 2012, noting that "said trial dates shall be *final*." (Emphasis in original.) Further, the order noted that Victoria's requests to compel, to continue trial, to conduct further discovery, for interim attorney fees and costs, and for an *in camera* interview were withdrawn.

¶ 7 The record reflects that, on October 29, 2012 (*i.e.*, more than 21 days after Brunkalla was allowed to withdraw), Victoria filed a *pro se* appearance and a petition for interim attorney fees and costs. That same day, the court struck the fee petition, but gave Victoria leave to refile it with proper notice. Victoria refiled the petition, arguing that the fees were necessary to allow her to adequately participate in the litigation, as she was unemployed and had no remaining funds, whereas Keith was employed and earned $15,000 (gross) monthly. Victoria requested that Keith be ordered to pay to her $25,000 as interim fees and costs. No affidavits or exhibits were attached to Victoria's petition. Keith both responded to Victoria's petition and moved to dismiss it: (1) denying that Victoria's depiction of either his or her finances was accurate; (2) asserting that he owed his current counsel almost $6,000 and that he owed his former counsel $25,000; (3) asserting that he previously paid $12,000 in interim fees to Victoria's former counsel and could not afford to contribute further to her fees; and (4) arguing that an interim fee award was inappropriate, as Victoria was acting *pro se* and, therefore, was not incurring fees and there was currently no attorney to whom an award could be made. Keith attached financial and other affidavits to his response.

¶ 8 On November 26, 2012, the court denied Victoria's fee petition. The order noted that, "if [Victoria] retains trial counsel, said counsel may file a petition for interim fees which may be heard on an emergency basis." Further, the order reiterated that the December trial dates were "*firm* and *final*." (Emphases in original.)

¶ 9 On November 29, 2012, Victoria filed an "emergency" petition for interim fees. The petition alleged that she wished to retain her former counsel, but that she owed counsel's firm

- 3 -

approximately $9,000 and could not afford to pay for further legal work. Victoria alleged that she had already borrowed $11,000 from her mother to finance the litigation. She requested $30,000 in interim fees. That same day, the court denied the petition.

¶ 10　　On December 18, 2012, two days before trial was scheduled to commence, Victoria filed an "emergency" petition for interim attorney fees and to postpone the trial. She argued that the interim fees were necessary in order to adequately participate in the proceedings and that the trial should be postponed because she was an economically disadvantaged party. In addition, Victoria alleged that she could not, due to physical and mental issues, act as her own attorney. Specifically, she alleged that, on December 17, 2012 (the day before she filed her emergency petition), she underwent a double lumpectomy to have two masses removed from her left breast. She alleged that she was in a great deal of physical pain and had been prescribed two different pain medications, hydrocodone and Cipro. Victoria asserted that she experienced the following side effects from taking the prescribed medications: dizziness, confusion, extreme fatigue, diarrhea, weakness, and nausea. Finally, Victoria alleged that she was suffering from depression brought on by the divorce proceedings and that her psychiatrist had prescribed two additional medications for her to take daily, which left her drowsy, anxious, and dizzy. No affidavits or other documents were attached to the petition.

¶ 11　　On December 20, 2012, the parties appeared for a hearing on Victoria's emergency petition and for trial. Keith argued that Victoria's emergency petition should be dismissed, but the court denied that motion. Victoria then argued that the court should award her interim attorney fees to "level the playing field" because she could not afford her own attorney. Keith argued that interim attorney fees were inappropriate because interim fees were defined as "attorney's fees and costs assessed from time to time while a case is pending, in favor of the petitioning party's *current counsel*" (emphasis added), but that Victoria was not represented by counsel. The court agreed, it denied the petition for interim fees on the basis that Victoria had no current counsel to whom fees could be awarded, and, further, it advised Victoria that her prior petitions for fees had been denied for the same reason.

¶ 12　　Addressing the request to continue trial, Victoria argued that she had recently undergone a double lumpectomy, was not prepared for trial, did not know the law, and could not represent herself. However, Victoria did not offer evidence in support of her assertions regarding the surgery, medication, or effects thereof. Keith noted that, on November 26, 2012, Victoria had advised the court that she had a surgery scheduled for a few days before trial and that she would not, therefore, be prepared. Nevertheless, the court at that time entered an order reiterating that trial would commence on December 20, 2012, and that the trial dates were firm and final. Further, Keith argued that there was not, pursuant to Illinois Supreme Court Rule 231 (eff. Jan. 1, 1970), "sufficient cause" shown to grant a continuance, and Keith noted that the case had been pending since August 2010, had been set for trial twice previously, and had most recently been rescheduled to accommodate Victoria when Brunkalla withdrew. The court denied the request to continue on those bases.

¶ 13　　Trial commenced. Victoria presented evidence and cross-examined Keith. The court asked Victoria how she got to court that day, and she stated that she had driven herself. On January 4, 2013, the court entered the dissolution judgment.

¶ 14　　Victoria moved for a new trial. On January 24, 2013, the court denied Keith's motion to strike and dismiss Victoria's motion and held a hearing thereon. Addressing Victoria's contention that she should have been awarded funds to hire a lawyer and that, in November,

her former attorney had stated that she would represent Victoria as long as fees were awarded, the court noted that the attorney at issue was experienced and:

> "[She] knows to come in for interim attorney's fees. She has to come in and ask for interim attorney's fees.
>
> The rules do not and the statute does not contemplate an award of attorney's fees to you so you go–then go out shopping for an attorney. That's not how it works.
>
> The attorney has to come in and ask for interim attorney's fees on her own behalf because she is then the attorney of record."

¶ 15    Addressing Victoria's contention that the court should have granted a trial continuance, the court noted that Victoria had essentially come in on the day of trial asking for a continuance, despite the fact that she was aware that the case was previously set for trial and that the date was marked firm and final. Further, the court noted that Victoria's motion was not supported by an affidavit. Moreover, regarding Victoria's competence at trial, the court found that there was nothing in Victoria's performance, particularly when it came to cross-examining Keith, to suggest that Victoria was incompetent or unable to proceed. "As a matter of fact, you did–and I said this I think at the time, an *** admirable job in your cross-examination of [Keith]."

¶ 16    The court denied Victoria's motion for a new trial. On February 21, 2013, Victoria filed a *pro se* notice of appeal.[1]

¶ 17                                        II. ANALYSIS

¶ 18    On appeal, Victoria does not challenge the dissolution judgment. Rather, she argues that: (1) her due process rights were violated where the court, after Brunkalla withdrew and in violation of Rule 13, entered a series of orders prejudicial to her; (2) the court erred where it denied her request for interim attorney fees so that she could hire counsel; and (3) the court abused its discretion where it denied her request to continue the trial on account of a recent surgery. Accordingly, while she does not challenge any provision of the dissolution judgment itself, she requests reversal and a remand for a new trial.

¶ 19                                        A. Rule 13

¶ 20    Victoria argues first that the trial court violated Rule 13 where it entered a series of orders prejudicial to her immediately after allowing Brunkalla to withdraw. She argues that the violation undercut her "right to counsel," which amounts to a fundamental due process violation.

¶ 21    We must initially address Keith's contention that Victoria has waived this issue because she did not raise it before the trial court. We decline to find the issue waived (or forfeited). Generally speaking, the waiver rule is a limitation on the parties, not on the jurisdiction of this court, and we may consider an issue not raised in the trial court if the issue is one of law and is fully briefed by the parties. *Rajcan v. Donald Garvey & Associates, Ltd.*, 347 Ill. App. 3d 403, 409 (2004). The parties here have fully briefed the issue, and they agree that whether the court violated Rule 13 and, consequently, Victoria's due process rights is a question of law that we review *de novo*. See *Longstreet v. Cottrell, Inc.*, 374 Ill. App. 3d 549, 551-52 (2007) (supreme court rules reviewed *de novo*); *People v. Wallace*, 77 Ill. App. 3d 979, 981 (1979) (whether

---

[1]Victoria is, however, represented by counsel on appeal.

certain conduct happened is a question of fact, but whether certain conduct violated a rule or statute is a question of law). Accordingly, we will address Victoria's Rule 13 argument.

¶ 22        Rule 13 provides, in relevant part, that, when an attorney moves to withdraw, his or her client must have notice and be informed that he or she should, within 21 days after entry of the withdrawal order, retain other counsel or file an appearance. Ill. S. Ct. R. 13(c)(2) (eff. July 1, 2013). Victoria does not dispute that she received proper notice and that the September 12, 2012, order granting Brunkalla's withdrawal motion notified her that she should, within 21 days, obtain new counsel or file an appearance. However, Victoria notes that courts have held that nothing prejudicing a client's rights should occur within the 21 days following the allowance of the attorney's withdrawal. See *In re Marriage of Miller*, 273 Ill. App. 3d 64, 69 (1995) ("We find that the letter and spirit of Rule 13 require a 21-day transition period and that nothing prejudicing a client's rights should occur within the 21 days following the allowance of an attorney's withdrawal."). Here, Victoria asserts that the court took prejudicial action within Rule 13's 21-day window when it set "firm and final" trial dates of December 20 and 21, 2012 (*i.e.*, more than 90 days later). She also notes that she was not present in court when the September 12, 2012, withdrawal order was entered and that she had no idea that the court would set a final trial date after allowing Brunkalla to withdraw. Victoria also suggests that the court prejudiced her where it allowed withdrawal and then, in the same order, noted that her interim fee petition, request for discovery, and request for an *in camera* interview were withdrawn. Finally, Victoria also vaguely suggests that the withdrawal should not have been granted.

¶ 23        There was no Rule 13 violation here. First, despite Victoria's reliance on *In re Marriage of Fahy*, 208 Ill. App. 3d 677, 688 (1991), we note that there is no constitutional "right to counsel" in a dissolution proceeding, so a Rule 13 violation cannot impinge on any such "right." See *In re Marriage of Schmidt*, 241 Ill. App. 3d 47, 48-49 (1993) (neither the United States nor the Illinois Constitution provides a right to counsel in a dissolution action); *Hermann v. Hermann*, 219 Ill. App. 3d 195, 198 (1991) ("It would be an extravagant expansion of the sixth amendment to hold that it applies equally to civil and criminal proceedings. Certainly the defendant had the right to *employ* counsel." (Emphasis added.)).

¶ 24        Second (and whether or not Victoria was present in court on September 12, 2012), there was nothing inherently prejudicial in the court's decision to allow Brunkalla to withdraw and to then schedule a firm and final trial date *more than 90 days* thereafter. Indeed, when the court allowed Brunkalla to withdraw, the trial was scheduled for October 2012. It was because of Brunkalla's withdrawal and in order to *comply* with Rule 13 and to accommodate Victoria that trial was rescheduled to December 2012. Similarly, there was nothing inherently prejudicial about the court's order noting that the remaining requests were "withdrawn." Those requests were not denied or dismissed with prejudice. Rather, that they were deemed withdrawn suggests that Victoria or any new counsel could, if appropriate, refile them.

¶ 25        Third, Victoria's suggestion that the court erred in allowing Brunkalla to withdraw (an issue we review for an abuse of discretion (*In re J.D.*, 332 Ill. App. 3d 395, 404 (2002))) appears to be twofold. First, she suggests that the order allowing the withdrawal was an abuse of discretion because withdrawal was allowed too close to the pending October trial dates. That issue, however, was immediately remedied by the court's order striking those trial dates and rescheduling trial more than 90 days later. Second, Victoria asserts that the court erred in permitting Brunkalla's withdrawal because it was "doubtful" that another attorney would

assume representation when he or she became aware that Victoria had limited funds and a looming, firm and final trial date. This is pure speculation. Further, the November 26, 2012, order reflects that Victoria was informed that any counsel she found could come in on an emergency basis to seek fees for undertaking the representation. Victoria views that order dismissively, noting that any counsel's request for fees on an emergency basis could, theoretically, have been denied when presented. Of course, the request might also have been granted. In any event, Victoria's argument is again pure speculation and simply does not convince us that the court abused its discretion in allowing Brunkalla to withdraw. In sum, we reject Victoria's argument that there was a Rule 13 violation.

¶ 26                                    B. Interim Fee Award

¶ 27        Victoria argues next that the trial court erred in denying her multiple petitions for interim attorney fees for purposes of allowing her to hire counsel. She agrees that section 501(c-1) of the Act provides that an interim fee award should go to "current counsel." 750 ILCS 5/501(c-1) (West 2010). However, she disagrees that the language operates to bar a *pro se* litigant from seeking funds to obtain counsel.

¶ 28        The parties agree that we review for an abuse of discretion a trial court's decision to grant or deny interim attorney fees. See *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 45. We note, however, that, to the extent the parties debate whether a trial court may award interim attorney fees to a party not represented by counsel, that issue requires interpretation of section 501(c-1) of the Act (750 ILCS 5/501(c-1) (West 2010)) and, accordingly, *de novo* review. See *In re Marriage of Anderson*, 405 Ill. App. 3d 1129, 1134 (2010); see also *In re Marriage of Pal*, 397 Ill. App. 3d 903, 908 (2010).

¶ 29        Section 508(a) of the Act provides for attorney fee awards in dissolution cases, and it states that interim fee awards may be issued in accordance with section 501(c-1) of the Act. See 750 ILCS 5/508(a) (West 2010). Although the general rule is that parties are responsible for their own attorney fees, the General Assembly enacted these fee provisions "so that a spouse with greater financial resources would not have an unfair advantage in dissolution proceedings." *Pal*, 397 Ill. App. 3d at 910; see also 750 ILCS 5/102(5) (West 2010) (a purpose of the Act is to "make reasonable provision for spouses and minor children during and after litigation, including provision for timely awards of interim fees to achieve substantial parity in the parties' access to funds for litigation costs"). Accordingly, Victoria argues that, even though section 501(c-1) provides that interim attorney fees mean "attorney's fees and costs assessed from time to time while a case is pending, in favor of the petitioning party's *current counsel*, for reasonable fees and costs either already incurred or to be incurred" (emphasis added), the policy behind allowing such fees is to permit a financially disadvantaged spouse from being, essentially, "outlitigated" by the opposing spouse's superior resources. As such, she argues, the fact that she did not have current counsel to whom an interim fee award could be issued should not have acted to preclude such an award.

¶ 30        While Victoria is correct that, generally speaking, the Act's attorney fee provisions seek to achieve some parity between the parties' financial resources during the litigation, she somewhat ignores the central issue that the court identified with her fee petitions, namely, that the Act awards interim fees to "current counsel" and, because she had no "current counsel," she had neither attorney fees nor counsel to whom they could be awarded. Nor did Victoria present an affidavit from an attorney reflecting that he or she would be willing to undertake

representation upon receipt of a specified retainer. As such, the court did not have either a basis for assessing what amount to award or any manner for ensuring that an award would even go to an attorney, as opposed to being used by Victoria in any manner she saw fit.

¶ 31 Ultimately, however, we need not decide here whether section 501(c-1) authorizes an interim fee award to allow a *pro se* litigant to retain counsel. We review the trial court's decision, not its reasoning, and, if the decision is correct, we may affirm the trial court on any basis in the record. See, *e.g.*, *Pal*, 397 Ill. App. 3d at 911.

¶ 32 Here, even if interim fees were available to Victoria under the statute, the trial court did not abuse its discretion in declining to award them. Section 501(c-1) requires that an interim fee petition be supported by at least one affidavit. 750 ILCS 5/501(c-1)(1) (West 2010); *Radzik*, 2011 IL App (2d) 100374, ¶ 40 (party seeking interim fees is expected to file a petition supported by at least one affidavit delineating relevant factors). Victoria's four fee petitions filed after Brunkalla withdrew were not verified, nor were any affidavits attached thereto.[2] Further, section 501(c-1) permits an interim fee award upon the trial court's findings that the petitioning party lacks sufficient funds to adequately participate in the litigation *and* that the party from whom fees are requested has sufficient ability to pay reasonable amounts. 750 ILCS 5/501(c-1)(3) (West 2010). Accordingly, an interim fee award must be supported by nontestimonial evidence, such as affidavits and financial disclosure statements. *Radzik*, 2011 IL App (2d) 100374, ¶ 40. Here, Victoria's petition requested $25,000 to $30,000 in interim fees and alleged that she had no funds to hire an attorney; however, the petition provided no verification, affidavits, or any other nontestimonial support for her request. In contrast, Keith's response to the petition alleged that he had already paid Victoria $12,000 in interim fees, that he owed his own attorneys outstanding fees, and that he lacked sufficient funds to further contribute. Further, Keith's response contained affidavits and exhibits to support his claims. Victoria points out that Keith's verified response admitted that his 2011 gross earnings were $210,000 and that she was unemployed. This, however, is overly simplistic and paints an incomplete picture of both the parties' finances and Keith's response in its entirety, which also alleged that his 2011 net earnings were $110,000, that Victoria was voluntarily unemployed, and, further, that other expenses, such as maintenance and child support, left him without funds to pay his own attorneys.

¶ 33 In *Radzik*, this court found that a trial court abused its discretion in awarding interim fees to a party where: (1) the petition contained no affidavit or any other financial documents that might support a fee award; (2) the petition alleged only generally that the petitioner could not pay and that the respondent had a substantial income; and (3) the respondent provided evidence regarding each party's financial status. *Id.* ¶¶ 48-53. Accordingly, here, we find that the trial court did not abuse its discretion in declining to award interim fees where Victoria did not attach affidavits or other nontestimonial support to her petitions and, therefore, did not

---

[2]Victoria asserts that, even when she had counsel, the court would not award her interim fees. Victoria notes that, on September 12, 2012, an interim fee petition filed by Brunkalla was pending, and the court later found that petition to have been withdrawn. Victoria suggests that, because Brunkalla could not convince the court to award interim fees, she withdrew. The record does not bear out this assertion. Rather, the petition filed by Brunkalla sought interim fees *in the event* she was not permitted to withdraw. The interim fee request was an alternative request. Therefore, the court's finding that the interim fee petition was withdrawn is consistent with the fact that, because Brunkalla was granted leave to withdraw and to file a final fee petition, an interim fee award to Brunkalla was unnecessary.

meet her burden of proving that she was entitled to the relief requested. *Id.* ¶ 51 (party requesting interim fees bears burden of proving entitlement to requested relief).

¶ 34                           C. Trial Continuance

¶ 35    Victoria's final argument on appeal is that, given that she had recently undergone breast surgery, the trial court abused its discretion by denying her request for a continuance. We disagree.

¶ 36    It is within the trial court's sound discretion to grant a request for a continuance, and its decision will not be disturbed absent a manifest abuse of that discretion. *Miller*, 273 Ill. App. 3d at 67. The record here does not reflect an abuse of discretion. See *In re Marriage of Levinson*, 2013 IL App (1st) 121696, ¶ 34 (an abuse of discretion occurs where no reasonable person would adopt the view taken by the trial court). The trial court considered that this dissolution case had been pending for more than two years and that the trial had twice been rescheduled. The court considered that Victoria was informed in September 2012 that the December trial dates were firm and final and was informed on November 26, 2012, that the trial would not be rescheduled on account of her upcoming surgery. (We note that nowhere in the record is there any indication that the surgery was required on an emergency basis.) Nevertheless, only two days prior to trial, Victoria filed a request to continue (which was then heard on the day that trial was scheduled to commence). Victoria's assertions, that she was not prepared and could not represent herself on account of her surgery and medications, were not supported. For example, she filed no affidavits on her own behalf or from physicians, which might have attested to her symptoms and the effects of any medications she purportedly was taking, nor did she attach medical records or any other documents supporting the date of surgery, the medications prescribed, or the effects thereof. Further, the trial court was able to personally observe Victoria, finding nothing reflecting that she was unable to proceed. Indeed (albeit after it had already denied the request), it learned that Victoria had been able to drive herself to trial, which supported the court's finding that Victoria did not appear unable to perform at trial. In fact, the court found that Victoria performed admirably at trial. Accordingly, we cannot conclude that no reasonable person would adopt the court's view, and we reject Victoria's argument. See *In re Marriage of Drewitch*, 263 Ill. App. 3d 1088, 1095 (1994) (no abuse of discretion where request for continuance based on the wife's illness and supported by a doctor's note was denied; the motion was filed six days before trial, and the case had been continued several times); *cf. Reecy v. Reecy*, 132 Ill. App. 2d 1024, 1026, 1028 (1971) (the court's denial of a continuance was an abuse of discretion where the request for a continuance was based on the attorney's trial schedule and a serious illness, which was supported by an affidavit from the attorney's physician).

¶ 37                           III. CONCLUSION

¶ 38    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 39    Affirmed.