NOTICE
Decision filed 10/24/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240895-U

NO. 5-24-0895

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| MAD COW OIL COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 23-CH-72 |
| | ) | |
| H&R OIL PROPERTIES, INC., | ) | |
| PLAINS MARKETING, L.P., and | ) | |
| UNKNOWN CLAIMANTS, | ) | Honorable |
| | ) | Ronald J. Foster Jr., |
| Defendant-Appellees. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justice Boie concurred in the judgment.
Justice Vaughan dissented.

**ORDER**

¶ 1    *Held*:  The circuit court improperly took judicial notice of the documents that did not contain readily verifiable facts from sources of indisputable accuracy and the circuit court erred in dismissing the plaintiff's complaint with prejudice based upon the court's own interpretation of the content of those documents. The judgment is vacated and the cause is remanded for further proceedings.

¶ 2    The plaintiff, Mad Cow Oil Company, filed a complaint against the defendants, H&R Oil Properties, Inc. (H&R), Plains Marketing, L.P. (Plains), and unknown claimants, arising from a dispute over the ownership and the right to remove oil and gas from a 120-acre property located in Madison County, Illinois. The circuit court granted the defendants' motion to dismiss the complaint with prejudice under section 2-615(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(a) (West 2022)). Mad Cow appealed. The central question for consideration is whether

1

the circuit court correctly relied on the use of judicial notice of documents to dismiss the plaintiff's complaint with prejudice. We conclude that the circuit court erred when it relied on and interpreted documents that could not be verified and were not reliable. Accordingly, we vacate the judgment of the circuit court and remand the case for further proceedings.

¶ 3                                      I. BACKGROUND

¶ 4      The pertinent facts are taken from the pleadings and exhibits in the record. On March 18, 2019, Madison County conveyed and quitclaimed certain mineral interests related to 120 acres of property, located in St. Jacob Township, to Thomas Maag through a tax sale, and the quitclaim deed was recorded the following day. On September 27, 2023, Maag executed a warranty deed that purported to transfer all mineral interests related to the property, including oil and gas, to Mad Cow. The warranty deed was recorded on September 28, 2023.

¶ 5      On October 10, 2023, Mad Cow filed a complaint against H&R, Plains, and unknown claimants in the circuit court of Madison County. According to the general allegations in the complaint, Mad Cow was the owner in possession of certain mineral interests related to the property in Madison County, Illinois, comprising about 120 acres, described as:

> "The South Half of the Southwest Quarter, and the Northwest Quarter of the Southwest Quarter, of Township 3 North, Range 6 West, of Section 27, in Saint Jacob Township, Madison County, Illinois, Parcel ID No. 05-1-33-27-00-004.99M."

Mad Cow further alleged that H&R was operating oil pumps, "producing 2 or more barrels of oil per day," on the property "without permission of, or payment to" Mad Cow, and that Plains had been purchasing the crude oil from H&R "since at least January 1, 2019," without paying Mad Cow "or its predecessor in interest." Mad Cow claimed that since January 1, 2019, "crude oil in Illinois has had an average sale value of $73.00 per barrel." Assuming production of two barrels

2

per day since January 1, 2019, Mad Cow claimed it had suffered at least $262,000 in damages, representing the amount of oil removed from the property.

¶ 6      In count I of the complaint, Mad Cow sought an award of damages from H&R for the oil removed from the property. In count II, Mad Cow sought a judgment against H&R and all unknown claimants, seeking declaratory relief that Mad Cow was "the fee simple owner, to the exclusion of all others," of the mineral interests, including the oil and gas interests, in the property. Counts III through IV were brought against Plains. In count III, Mad Cow alleged that Plains held in escrow certain funds related to the oil production that belonged to Mad Cow. Mad Cow sought an accounting of said funds along with an order directing Plains to remit said funds to Mad Cow. In count IV, Mad Cow alleged that Plains breached its duty to keep accurate records of its oil purchases, and that Mad Cow sustained damages because of the breach. In count V, Mad Cow alleged that by taking possession of crude oil produced on the property, Plains committed a trespass to Mad Cow's property and that Mad Cow was thereby damaged.

¶ 7      H&R filed an answer and affirmative defenses. In its answer, H&R admitted that it had "been operating oil wells on the property and, from time to time, had produced 2 or more barrels of oil per day since January 1, 2019." H&R also admitted that it had sold the oil to Plains since January 1, 2019. H&R further admitted that the price of crude oil had an average sale value of $73 per barrel, as alleged by Mad Cow. H&R denied that it was liable to Mad Cow or that it owed any money to Mad Cow. As affirmative defenses, H&R claimed that Mad Cow's complaint failed to state a claim on which relief could be granted and that Mad Cow's claim was barred by the doctrine of *laches*.

¶ 8      Plains filed a motion to dismiss the plaintiff's complaint pursuant to section 2-615(a) of the Code and attached various exhibits in support of the motion. Plains also filed a supporting

3

memorandum. Plains claimed that the complaint misrepresented the plaintiff's ownership interest in oil and gas rights on the property and failed to include necessary parties. Plains further claimed that counts III through IV failed to state a claim for which relief could be granted.

¶ 9     Plains argued that on or around March 18, 2019, Maag had acquired a quitclaim deed from Madison County (Ex. A1), and that the quitclaim deed indicated that the following property interest was transferred:

> "Mineral rights in the South 1/2 of the SW 1/4 and the NW 1/4 of the SW 1/4 of Section 27, T3N, R6W of the 3rd P.M., situated in the County of Madison and State of Illinois. Permanent Parcel No. 05-1-33-27-00-000-004.99M. Property address: Unknown Rd, St. Jacob, IL 62281."

Plains further alleged that on or around September 28, 2023, Maag executed a warranty deed in favor of Mad Cow (Ex. A2), and that the warranty deed indicated that the following property was transferred:

> "The South half of the southwest quarter, and the northwest quarter of the southwest quarter, of Township 3 North, Range 6 West, of Section 27, in Saint Jacob Township, Madison County, State of Illinois, comprising 120 acres, all mineral interest only, including oil and gas, along with right to remove same."

¶ 10     Plains argued that when Madison County originally transferred the property to Maag, the rights to oil and gas were not included within the "mineral interests" transferred, and that when Maag transferred his interest in the property to Mad Cow, he attempted to add oil and gas which was an interest that he did not own. Plains alleged that it went to the Madison County Property Tax Inquiry website and searched for the permanent parcel number 05-1-33-27-00-000-004.99M found on Maag's quitclaim deed. Plains further alleged that the Madison County Property Tax Inquiry website indicated that the property rights given to parcel ID number 05-1-33-27-00-000-004.99M were "mineral rights." Plains attached a document (Ex. A3), titled "Property Information," that it claimed had been obtained from the website. The document identifies the

4

parcel number 05-1-33-27-00-000-004.99M found on the quitclaim deed. Exhibit A3 identified "Land Use" as "0780 – Minerals-Miscellaneous," "Property Class" as "7600 – MIN - MISCELLANEOUS," and "Legal Description" as "S1/2 SW & NW SW MINERAL RIGHTS." There are no definitions for the terms "mineral rights" or "mineral interests" in the document. The document contains details for payment of taxes, a tax history, and does not purport to be a deed.

¶ 11    Plains also attached and relied upon a document (Ex. B) with the heading, "Madison Co. Errata Card Classification." Exhibit B is a document on the letterhead of the Office of Maps and Plats, Division of the Supervisor of Assessments. The words "area numbers" are hand printed just beneath the heading on the letterhead. There is also a column with numbers below a designation entitled, "Area Code." Plains noted that the words "Oil Rights Entries" are typed across from the number "31," and that "Mineral Rights Entries (other than Oil, Coal & Gas)" is typed across from the number "33." Other than a number and a typewritten designation, there is no information regarding the purpose of these "area codes" or their application. There is no information on the document that indicates how it was acquired or whether it came from a reliable website. Nevertheless, Plains relied upon this document in support of its claim that these numbers designated property interests that translated into ownership interests. Plains argued that because the parcel number on the quitclaim deed obtained by Maag (Ex. A1) included the area code "33," that only mineral rights "other than oil, coal and gas" were transferred to Maag at the tax sale.

¶ 12    Plains further argued that the "unknown claimants" referenced in Mad Cow's complaint were, in fact, "known." Plains indicated that it had found the names of the "known" owners during its online search of the Madison County Property Tax Inquiry website. Plains referred to a group of documents (Ex. C1 through C18) that it had obtained from the website. Plains noted that the name and address of the owner and the parcel number were listed on each document. Plains

asserted that "31" was included in the parcel number on each document, and that "31" referred to "area code 31." Relying on Exhibit B, Plains further asserted that "area code 31" denotes those who have an interest in the oil and gas rights in a designated property.[1] Plains noted that each document indicated that the land use was "0730 – Oil" and that the property class was "7200 – OIL LEASES." Plains did not explain how these exhibits demonstrated that the individuals/entities were "known" parties for purposes of inclusion in the plaintiff's complaint. The "Property Information" document for each individual/entity was also taken from the tax inquiry website and set forth taxing information associated with the property described. None of the exhibits were represented as deeds to the property at issue. Nevertheless, Plains sought dismissal of the complaint because Mad Cow failed to show it had acquired an interest in the oil and gas rights on the property. Plains also claimed that the action should be dismissed because all of the owners identified in exhibits C1 through C18 were necessary parties who should have been joined.

¶ 13    Next, Plains addressed the individual counts of the complaint directed against it. Regarding count III, Plains argued that Mad Cow failed to properly plead the necessary elements to state a claim for equitable accounting. Regarding count IV, Plains claimed that it owed Mad Cow no duty, pursuant to any agreement, contract, or statute, to preserve accurate records of oil purchases, and therefore, Plains could not be liable for spoliation. Finally, Plains claimed that count V failed to state a claim for trespass because Mad Cow did not allege that Plains wrongfully entered onto the property without permission.

---

[1]Plains made this argument even though Exhibit B indicated area code "31" pertains to "Oil Rights Entries." Area code "34," according to Exhibit B, pertains to "Gas Rights Entries."

¶ 14    On February 22, 2024, the circuit court conducted a hearing on Plains' motion to dismiss. During the proceedings, H&R was granted leave to join in Plains' motion to dismiss. After hearing arguments from counsel, the court took the matter under advisement.

¶ 15    On April 1, 2024, the circuit court issued an order granting the defendants' section 2-615 motion to dismiss the complaint with prejudice. In its order, the court found that the documents attached to Plains' motion to dismiss were public records and/or records from governmental websites and took judicial notice of them. The court then found that the area code "33" appeared in the permanent parcel number in the quitclaim deed acquired by Maag (Ex. A1) and the warranty deed obtained by Mad Cow (Ex. A2). The court also found that area code "31" appeared in the permanent parcel numbers in each document comprising exhibits C1 through C18. Referring to the area code numbers listed on the Madison Co. Errata Card Classification (Ex. B), the court concluded that "area code 33" pertained to mineral rights, excluding oil, coal and gas, and that "area code 31" pertained to oil rights. Based upon its interpretation of the area codes and parcel identification numbers contained in the "public records," the court concluded that "Thomas Maag did not receive a property right in the oil and gas from the tax deed. Therefore, [Mad Cow] did not acquire a property right in the oil and gas through the warranty deed executed by Thomas Maag in favor of Mad Cow." The court acknowledged that a property owner is allowed to sever "any and all minerals" from the land, citing the Severed Mineral Interest Act (765 ILCS 515/1 *et seq.* (West 2022)). Nevertheless, the court reasoned that if Madison County had intended to convey oil rights in the property, the tax deed would not have included area code 31. "Since Thomas Maag did not receive oil or gas rights through the tax deed, it is evident that Mad Cow did not acquire these rights through the subsequent warranty deed from Thomas Maag."

¶ 16    On April 30, 2024, Mad Cow filed a motion to reconsider the ruling. Mad Cow claimed that it owned the mineral rights on the property, including the rights to oil and gas, and that the circuit court misapprehended the law. Mad Cow argued that in Illinois, "oil and gas in place are minerals, but by reason of their fugacious qualities they are incapable of an ownership distinct from the soil." Mad Cow continued, "In fact, the law of Illinois is that oil and gas are minerals, but cannot be separated from the mineral estate until removed from the ground." Mad Cow concluded that nothing in the record indicated that oil or gas was excluded from the definition of minerals on the tax deed. Plains filed a response in opposition to the motion, arguing that the circuit court correctly applied the law. On July 18, 2024, the circuit court denied Mad Cow's motion to reconsider. This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, Mad Cow claims that the circuit court erred in dismissing the complaint with prejudice under section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West 2022)), where the well-pled factual allegations in the complaint stated claims upon which relief could be granted and where the circuit court improperly considered documents attached to the defendant's motion to dismiss as public records. In response, the defendants argue that the circuit court properly took judicial notice of public records and records on government websites as it considered the section 2-615 motion to dismiss and that the circuit court did not err in dismissing the complaint with prejudice.

¶ 19    Initially, we consider the propriety of the circuit court's decision to take judicial notice of the documents attached to the defendants' motion to dismiss. We note that Mad Cow did not raise this specific objection in the circuit court. Although arguments not raised in the circuit court are generally forfeited, the doctrine of forfeiture serves as a limitation on the parties and not on the

8

reviewing court. *Pinske v. Allstate Property & Casualty Insurance Co.*, 2015 IL App (1st) 150537, ¶¶ 18-19. A reviewing court may consider an issue not timely raised where the issue is one of law and has been fully briefed by the parties on appeal. *Lake County Grading Co. v. Forever Construction Co.*, 2017 IL App (2d) 160359, ¶ 42 (citing *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996)); *In re Marriage of Heindl*, 2014 IL App (2d) 130198, ¶ 21. The record indicates that the circuit court considered the propriety of taking judicial notice of documents and that the matter has been fully briefed by the parties. Accordingly, we will address the argument on the merits.

¶ 20     A motion to dismiss under section 2-615 tests the legal sufficiency of the complaint based upon defects apparent on its face. *Reynolds v. Jimmy John's Enterprises*, *LLC*, 2013 IL App (4th) 120139, ¶ 25. A section 2-615 motion presents the question of "whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to state a cause of action upon which relief may be granted." *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. In ruling on a section 2-615 motion, a court considers only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. An order granting a section 2-615 motion to dismiss is reviewed *de novo*. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25.

¶ 21     Judicial notice is proper where the document in question is part of the public record and where such notice will aid in the efficient disposition of a case. *Village of Riverwoods v. BG Ltd. Partnership*, 276 Ill. App. 3d 720, 724 (1995). Judicial notice may be taken of public documents

9

that fall within the category of readily verifiable facts that are capable of instant and unquestionable demonstration. *May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153, 159 (1976). In addition, judicial notice may be taken of matters that are of common and general knowledge and facts that are readily verifiable from sources of indisputable accuracy. *Murdy v. Edgar*, 103 Ill. 2d 384, 394 (1984).

¶ 22    In this case, the circuit court took judicial notice of the quitclaim deed from Madison County to Maag (Ex. A1) and the warranty deed from Maag to Mad Cow (Ex. A2). The quitclaim deed and the warranty deed were public records recorded by the Madison County Recorder, and neither party argued that the documents were not public records. Thus, we find that the deeds were part of the public record and met the requirements for judicial notice.

¶ 23    The circuit court also took judicial notice of information in certain documents that allegedly identified various parcel owners' interests in the oil rights to the property (Ex. C1 through C18). The court concluded that the "individuals with an interest in the oil rights are known and identified in Exhibits C1 to C18 in Plains' Motion to Dismiss." The court also concluded that exhibits C1 to C18 "can be found on the Madison County Property Tax Inquiry website, which allows searches using Parcel ID numbers." It is not clear how the court concluded that the exhibits represented the known owners. What is clear is that the exhibits, C1 through C18, all contain a link to a specific page on the Madison County Property Tax Inquiry website. A view of the linked pages indicates that a complete copy of the document was not provided with the motion to dismiss. Notably, when the public website is accessed via the link, there is a disclaimer in a text box at the bottom of each linked page that was not included in any of the exhibits provided to the circuit court. The disclaimer provides:

10

"Disclaimer

Madison County Government makes every effort to produce and publish the most current and accurate information possible. The information maintained on this website should not be relied upon for any purposes except for those of the Madison County Government staff. Madison County Government accepts no responsibility for the consequences of the inappropriate use or the interpretation of data. No warranties, expressed or implied, are provided for data herein. By proceeding with a property search you are stating that the notice has been read and that you understand and agree with its contents." https://madisonil.devnetwedge.com (last visited Oct. 21, 2025).

This disclaimer specifically cautions that a user should not rely on the information contained on the page. More importantly, the Madison County Property Tax Inquiry website indicates the county does not accept responsibility for the inappropriate use or *interpretation of data* taken from the website. Therefore, we cannot conclude that the information in exhibit A3 and exhibits C1 through C18 falls within the category of readily verifiable facts capable of instant and unquestionable demonstration of which a court may take judicial notice. Accordingly, we conclude that the circuit court erred in relying on information from this website to interpret the meaning of the parcel documents.

¶ 24    Even if the circuit court was unaware of the disclaimer on the Madison County website, it was error for the court to ascribe any meaning to exhibits C1 through C18. Other than a website reference at the bottom of the document, there is no explanation of what these documents represent in the context of the motion to dismiss. The website is a tax inquiry database. The "Property Information" documents contain a tax history and a payment history. The parcel numbers for the various properties identified contain the number "31"; however, the significance

11

of the number is not a matter of common knowledge and its meaning and purpose are not readily verifiable from the website. The identification of the "Land Use" as "Oil" uses a code number of 0730. The "Property Class" as "Oil Leases" uses the code 7200. Again, there is no explanation of how these code numbers were assigned, or whether and how they relate to the number "31," if at all. Without some information, the numbers are meaningless. Several of the documents have a cautionary section which states, "Parcel has open forfeiture. Contact the Treasurer's Office For The Current Amount Owing (618-692-6260)." Therefore, it was error for the circuit court to interpret exhibits C1 through C18 as indicative of known individuals with an interest in oil rights to the exclusion of the plaintiff.

¶ 25    Furthermore, Plains relied on *City of Elgin v. Arch Insurance Co.*, 2015 IL App (2d) 150013, ¶ 34, for the proposition that a complaint must contain all the necessary parties. That proposition is true, as is the rule that allows for the addition of necessary parties under section 2-615 where it is alleged that all necessary parties have not been joined. See 735 ILCS 5/2-615(a) (West 2022); *City of Elgin*, 2015 IL App (2d) 150013, ¶¶ 37-38. Therefore, even if these entities could be construed as "known" parties, they can be added to the complaint as necessary parties. Dismissal of the complaint, with prejudice, would not be warranted.

¶ 26    Finally, the circuit court took judicial notice of the document on the letterhead of the Office of Maps and Plats (Ex. B). This document is not linked to a website. It was included within the exhibits attached to Plains' motion to dismiss, without attribution to its source or origin. As noted above, this document contains a heading, "Madison Co. Errata Card Classification," and the words "area numbers" are hand printed in lower case letters just below the heading. There is a column on the left side of the page with the heading "Area Code," and 9 two-digit numbers appear underneath the heading in that column. A type-written designation is across from each two-digit number. For

12

example, across from "31" is the designation, "Oil Rights Entries." The number "33" indicates "Mineral Rights Entries (other than Oil, Coal & Gas)," and the number "36" indicates "Building Leases, Airrights, Tunnels, ect. [*sic*]." The document contains no further information or explanation regarding the significance of the area code numbers or their meaning or application. For example, what does the term "Entries" refer to and how is it assigned? The term "errata" indicates it is intended to correct errors, but to what publication or source? The document is undated, and there is no indication as to the effective date of the area codes and whether they remain in effect. There is no information regarding the source of the codes contained in the document or their intended use. Simply stated, this document does not appear to be part of a public record or a document obtained from a governmental website. In addition, no explanation of the purpose and application of these codes was provided either by a knowledgeable person within the Office of Maps and Plats or a person with particular or specialized knowledge of the specific codes and identifiers. Thus, the codes and code designations within the document do not fall within the category of readily verifiable facts capable of immediate and unquestionable demonstration by resort to easily accessible sources of indisputable accuracy. Nevertheless, the court relied on these area codes to fully determine questions of disputed fact regarding the transfer of mineral interests in the original tax deed granted by Madison County. This was error.

¶ 27     The circuit court compounded these errors when it imputed meaning and significance to the area codes and incorporated those numbers into the parcel identification numbers without independent verification from a verifiable source, a supporting affidavit, or testimonial evidence.[2] The court did not have the benefit of an affidavit or deposition testimony from a member of the

---

[2]While the use of supporting affidavits or deposition testimony is not proper in a motion to dismiss pursuant to section 2-615, it would be proper in a motion to dismiss pursuant to section 2-619 (735 ILCS 5/2-619 (West 2022)) or a motion for summary judgment (735 ILCS 5/2-1005 (West 2022)).

Madison County government or another person who was familiar with the area codes and unique identifiers assigned to the parcel identification numbers. The meaning and significance of the area codes and the relationship of the area codes to the parcel identification numbers is not commonly known and was not readily apparent without reference to sources outside the record. Nevertheless, based upon its own interpretation of the area codes and the simple fact that the number was located in a parcel identification number, the court made a finding of fact that Maag did not receive an ownership interest in the oil or gas through the grant of the tax deed. The court went on to conclude that Mad Cow did not acquire such an interest through the warranty deed from Maag and dismissed Mad Cow's complaint with prejudice on that basis. The error by the court is even more evident when one considers that the number "31" and "33" only applies to "entries," which is an undefined term. There was simply no reliable, or verifiable, information presented to the court regarding the meaning and significance of the area codes. After thoroughly reviewing the record, we find that the circuit court erred in dismissing the plaintiff's complaint with prejudice.

¶ 28     The dissent also commits similar error by going outside the record, conducting its own search, and relying on a "frequently asked questions" section of a Madison County government website to find and determine the applicability and definition of the term "area number" as it relates to parcel identification numbers. According to the "frequently asked questions" section, the number located in the same position as the "33" in Maag's deed is referred to as the "Township Area Number." The "Township Area Number" is part of a numbering system "combined to make up the 'Map Number.' " "The Map Number is used to reference maps maintained by our Maps & Plats/GIS Department." https://www.madisoncountyil.gov/departments/chief_county_assesment _office/frequently_asked_questions.php. (last visited Oct. 21, 2025). The dissent does not explain why this information is relevant to the issues that were pending before the circuit court in the

14

defendants' motion to dismiss. The dissent fails to point to any readily verifiable source in the record that defines or explains the significance of the area code "31" or "33." Instead, the dissent relies on the "question-and-answer" section of a website to make findings of fact that interpret whether certain mineral interests were transferred in the tax deed to Thomas Maag. The dissent, without having any reliable evidence presented in the circuit court, goes even further to disparage Maag's actions. Findings of fact and credibility determinations are within the purview of the factfinder after the presentation of substantive evidence. Making factual findings and credibility determinations regarding Maag's intent in the conveyance to Mad Cow is outside the role of a reviewing court. While a reviewing court may affirm the decision of the circuit court on any basis supported by the record, the dissent goes well beyond the record on appeal and relies on matters that do not meet the requirements for judicial notice to arrive at its own factual findings in support of its impression that the judgment should be affirmed.

¶ 29                                    III. CONCLUSION

¶ 30    After reviewing the record, we find that the circuit court improperly took judicial notice of the documents attached to the defendant's motion to dismiss even though the documents noticed did not contain readily verifiable facts from sources of indisputable accuracy. The circuit court compounded the error in dismissing the plaintiff's complaint with prejudice based upon the court's interpretation of the meaning of those documents. As shown by the record, most of the documents attached in support of the motion to dismiss do not meet the requirements for judicial notice. And most of the documents were derived from sources that actually caution against use for the purpose of reliability. Accordingly, the judgment of the circuit court is vacated, and the cause is remanded for further proceedings.

¶ 31    Judgment vacated; cause remanded.

15

¶ 32    JUSTICE VAUGHAN, dissenting:

¶ 33    I respectfully dissent from my colleagues' decision. I agree with the majority's finding that the main issue raised in this appeal was whether the circuit court properly took judicial notice of the exhibits attached to defendants' motion to dismiss. However, I believe the circuit court's decision should be affirmed.

¶ 34    As noted by the majority, at no time did plaintiff argue before the circuit court that the documents attached to defendants' motion to dismiss failed to support dismissal because judicial notice would be improper. "Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal." *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15. In addition to making no argument regarding judicial notice, plaintiff never even objected to the documents attached to defendants' motion to dismiss. "A failure to object results in a waiver of the issue." *Turney v. Ford Motor Co.*, 94 Ill. App. 3d 678, 685 (1981). While neither forfeiture nor waiver are binding on this court, we should only overlook forfeiture to "obtain a just result or maintain a sound body of precedent." See *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 94 ("a court may overlook forfeiture where necessary to reach a just result or maintain a sound body of precedent"). I find neither applicable here.

¶ 35    What I find most relevant is the undisputable fact that Maag altered the language in the deeds. The original quitclaim deed from Madison County to Maag was filed on March 18, 2019. The language in that deed conveyed to Maag:

> "Mineral rights in the South 1/2 of the SW 1/4 and the NW 1/4 of the SW 1/4 of
>
> Section 27, T3N, R6W of the 3rd P.M., situated in the County of Madison and State
>
> of Illinois. Permanent Parcel No.: 05-1-33-27-00-000-004.99M Property Address:
>
> Unknown Rd, St Jacob, IL 62281."

16

¶ 36    The warranty deed from Maag to Mad Cow Oil Company filed on September 28, 2023, conveyed:

> "The South half of the southwest quarter, and the northwest quarter of the southwest quarter, of Township 3 North, Range 6 West, of Section 27, in Saint Jacob Township, Madison County, State of Illinois, comprising 120 acres, all mineral interest only, including oil and gas, along with the right to remove same. This conveyance includes any and all rights as set forth on document 2019R08377."

¶ 37    Notably, the deed language is known *only* by the exhibits attached to defendants' motion to dismiss. Section 2-606 of the Code of Civil Procedure requires a party to provide a copy of a written instrument if the claim is based thereon. 735 ILCS 5/2-606 (West 2022). Here, plaintiff alleged "fee simple" ownership "to the exclusion of all others" of the property but ignored section 2-606's requirement to attach a copy of the quitclaim deed from Madison County to Maag, a copy of the warranty deed from Maag to Mad Cow, or "document 2019R08377" referenced in the warranty deed.

¶ 38    However, even if waiver and forfeiture are overlooked, the trial court's dismissal should still be affirmed. It is well established that a trial court can take judicial notice in ruling on a motion to dismiss. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010) (citing *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009)); see also *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115 (1995). "A judicially noticed fact must be one not subject to reasonable dispute" because "it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011).

17

¶ 39    Illinois Rule of Evidence 201(f) (eff. Jan. 1, 2011) allows judicial notice at any stage of the proceeding, and Rule 201(d) requires a court to "take judicial notice if requested by a party and supplied with the necessary information." Ill. R. Evid. 201(d) (stating when judicial notice is "mandatory"). Judicial notice is not limited to facts that are known by common observation and includes matters that may not be "widely known" as long as the information is capable of verification from sources of undisputed accuracy. *City of Rock Island v. Cuinely*, 126 Ill. 408, 414 (1888); *People v. Davis*, 65 Ill. 2d 157, 161-65 (1976); *Metzger v. Brotman*, 2021 IL App (1st) 201218, ¶¶ 27-30; *BankUnited, National Ass'n v. Giusti*, 2020 IL App (2d) 190522, ¶ 36. Further, "[i]t is generally accepted that a court may take judicial notice of the information on a government website." *Edward Sims Jr. Trust v. Henry County Board of Review*, 2020 IL App (3d) 190397, ¶ 26 n.6 (citing *Ashley v. Pierson*, 339 Ill. App. 3d 733, 739-40 (2003), and Ill. R. Evid. 201(b)); see also *Kopnick v. JL Woode Management Co.*, 2017 IL App (1st) 152054, ¶ 26 (collecting cases and accepting information on a municipality's public website for judicial notice).

¶ 40    Here, in addition to the deeds, which my colleagues accepted as valid for purposes of judicial notice in this case, defendants' motion to dismiss included a printout of the Madison County property tax website revealing that parcel number 05-1-33-27-00-000-004.99M had a land use classification of "minerals-miscellaneous," a Madison County errata card classification issued by the Office of Maps and Plats, Divisions of the Supervisor of Assessments, and copies of property information from the Madison County property tax website related to numerous other entities allegedly paying tax for oil and gas rights on the same property.

¶ 41    First, the Madison County, Illinois, government website provides the meaning of each number found in the parcel number on its website. Madison County Illinois Government website https://www.madisoncountyil.gov/departments/chief_county_assesment_office/frequently_asked

18

_questions.php. (last visited Oct. 14, 2025).[3] The website confirms that the third set of numbers, as alleged in defendants' motion to dismiss, is the "township area number." *Id.* Defendants also submitted documentation from the Madison County Office of Maps and Plats, Divisions of the Supervisor of Assessments explaining the township "area" codes. The documentation revealed that township area code 31 was oil rights entries, 32 was coal rights entries, and 33 was for mineral rights entries other than oil, coal, and gas. Unlike the majority, I do not find the errata card confusing or unreliable as the codes clearly reveal the differentiation between the property interests. As such, I do not find the documentation unworthy of the second prong for judicial notice, *i.e.*, "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201(b)(2) (eff. Jan. 1, 2011).

¶ 42    Here, the necessary information from the Madison County Office of Maps and Plats, Divisions of the Supervisor of Assessments was provided. More importantly, there was neither evidence submitted, nor argument presented, that the township area codes comprising the third set of numbers on the Madison County parcel numbers were subject to revision or alteration in the scores of years since the Madison County property parcel number system was instituted. Given the source of the underlying information, it is my belief that judicial notice of the documentation from the Madison County Office of Maps and Plats, Divisions of the Supervisor of Assessments was proper as such the county's township area code classifications are easily verifiable in Madison County.

---

[3]The majority takes issue with my reliance on the "frequently asked questions" section on the Madison County website to claim I am looking outside the record. However, judicial notice allows every court to take judicial notice of a fact that is "not subject to reasonable dispute." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011). It is my position that the answers to the frequently asked questions provided on the Madison County website are facts from a source "whose accuracy cannot reasonably be questioned." *Id.*

¶ 43   However, even if I agreed with the majority that such information was improper for judicial notice under the second prong, there is no evidence that the township area code information contained therein was not "generally known within the territorial jurisdiction of the trial court." Ill. R. Evid. 201(b)(1) (eff. Jan. 1, 2011). No transcript of the February 22, 2024, hearing, at which time the motion to dismiss was argued, was included in the record for appeal. Long-ingrained principles establish that the "appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts which may arise from the incompleteness of the record will be resolved against the appellant. *Id.* Accordingly, this court should presume, even if it believed the attached documents were improper under Rule 201(b)(2), that the circuit court already knew about the township area code classifications as information being "within the territorial jurisdiction of the trial court." See Ill. R. Evid. 201(b)(1). Here, there is no evidence that the Madison County township area code classifications were not known by Madison County circuit court.

¶ 44   The majority also finds that the property tax records revealing previously established oil leases for a tract of land with the identical township, land, section, subsection, and block number as seen in Mad Cow's parcel number are equally unworthy of judicial notice. The majority claims the website's "disclaimer" removes the documents from the purview of judicial notice. I do not find the disclaimer a sufficient basis to ignore the records produced by the website. As noted by the majority, Madison County's disclaimer states that it "makes every effort to produce and publish the most current and accurate information possible." Regardless, as noted by the majority, the

failure to include known parties is insufficient to dismiss the case with prejudice, and therefore is irrelevant here.

¶ 45    It is my position that it is unnecessary to take judicial notice of the possible owner documentation in order to affirm the circuit court's decision. The township area code classifications, whether known previously by the court or accepted pursuant to judicial notice, confirm that oil and gas rights were not provided to Maag when he obtained the property from Madison County in 2019. In 2023, Maag altered the conveyance language when he transferred his land rights to Mad Cow to include the words "oil and gas, along with the right to remove same," essentially providing property rights to Mad Cow that were not previously conveyed to Maag. It is a well-established legal principle that "a transferee of property can never obtain a greater interest in the property than the person conveying the property has the power to convey." *Kovilic v. City of Chicago*, 351 Ill. App. 3d 139, 145 (2004). Nothing in plaintiff's complaint attempts to explain the dubious nature of altering the conveyance language. Nor would it since plaintiff failed to attach either of the deeds to the complaint.

¶ 46    A reviewing court may sustain the circuit court's decision on any grounds supported by the record regardless of the grounds relied upon by the circuit court, or if its reasoning, was correct. *Rodriguez v. Sheriff's Merit Comm'n of Kane County*, 218 Ill. 2d 342, 357 (2006). Here, even if my colleagues ignore the township area code classifications as improper for judicial notice purposes under Illinois Rule of Evidence 201(b)(2), there was no evidence submitted on appeal to contradict the possibility that the circuit court was already aware of the township area code classifications based on its own territorial awareness pursuant to Illinois Rule of Evidence 201(b)(1). Further, given the lack of a complete record, it is my position that this court is required to find "the order entered by the trial court was in conformity with law and had sufficient factual

21

basis." *Foutch*, 99 Ill. 2d at 391-92. Accordingly, I would affirm the trial court's dismissal of the complaint with prejudice.

¶ 47    For the foregoing reasons, I dissent.